The PEOPLE of the State of Colorado, Petitioner,

v.

John DUNCAN, Respondent.

No. 00SC437.

Supreme Court of Colorado,
En Banc.

Sept. 10, 2001.

Rehearing Denied Oct. 1, 2001.

Ken Salazar, Attorney General, John D. Seidel, Assistant Attorney General, Appellate Division, Criminal Justice Section, Denver, CO, Attorneys for Petitioner.

Lee E. Christian, Fort Collins, CO, Attorney for Respondent.

Justice COATS delivered the Opinion of the Court.

The People sought review of the court of appeals' decision in *People v. Duncan*, 12 P.3d 316 (Colo.App.2000), by writ of certiorari. The court of appeals vacated the defendant's conviction for being an accessory to first degree murder and his sentence of twelve years incarceration on the ground that his statutory right to a speedy trial was violated. Because the prosecution's failure to disclose discoverable material until the Friday before trial was not the result of bad faith, defense counsel's request for a continuance to investigate the new material operated to extend the time within which trial could be commenced by an additional six months, and because the defendant was tried within that period, the judgment of the court of appeals is reversed.

## I.

Respondent John Duncan was charged with first degree murder for the killing of Tait Ellingson. Duncan's trial was originally scheduled to commence on Monday, March 30, 1998. In September 1997, Aurora detectives spoke with Mustapha Torain, who was in custody at the Arapahoe County Jail and claimed that while Duncan and he were cellmates, Duncan confessed to committing the murder of Ellingson. On September 23, 1997, the prosecution endorsed Torain as a witness, and the following day produced discovery pertaining to Torain's expected testimony.

On the Friday before trial, March 27, 1998, the prosecutor informed defense counsel for the first time that in January 1998, Torain's sentence to the Colorado Department of Corrections had been modified to allow Torain to participate in a Community Corrections Program. Defense counsel also learned that the sentence modification was prompted, in part, by a letter dated December 3, 1997, from two Aurora detectives to a deputy district attorney in Denver, asking for assistance on behalf of Torain.

The letter, which was received by the prosecuting attorney in Duncan's case on March 26 at 8:35 p.m., stated that Mustapha Torain had provided the Aurora Police Department with assistance in investigating gang-related bank robberies, two murders (other than the Ellingson murder), and "another homicide that occurred in Aurora."[1] The letter also noted that Torain agreed to testify if called upon despite having received death threats, and that Torain had not requested compensation for his assistance in any of the cases.

Defense counsel argued that the letter constituted *Brady*[2] material and therefore moved for discovery sanctions, asking the trial court to dismiss the case or in the alternative strike Torain as a witness. In addition, defense counsel indicated that he would be unable to effectively counsel Duncan without a continuance to investigate Torain's veracity and the circumstances surrounding the modification of his sentence.

Although the trial court agreed that the letter was discoverable, it declined to dismiss the case or strike Torain as a witness, finding that the prosecution had not known about the letter requesting assistance for Torain until the previous evening and that neither the prosecution nor the police acted in bad faith. In support of this finding of no bad faith, the trial court noted that the letter did not reference the murder of Tait Ellingson by name. The trial court did agree to continue the trial date as well as the hearing on discovery sanctions,[3] but explained to Duncan that a continuance would extend his speedy trial deadline another six months from the order granting it. Although Duncan indicated at that time that he did not fully agree with the consequences of a continuance, he nevertheless felt that he had no choice but to accept one. The trial court thereafter vacated the original trial date and scheduled the trial to commence on July 27, 1998, approximately three months beyond the original speedy trial deadline.[4]

On May 1, Duncan again moved for discovery sanctions and moved to dismiss for violation of his statutory and constitutional speedy trial rights. After hearings on May 11 and June 30, the trial court made findings concluding that (1) the detectives who wrote the letter had not produced it to the district attorney's office only because it hadn't expressly mentioned the Ellingson homicide; (2) the detectives did not withhold the letter in bad faith; and (3) the prosecution did not act in bad faith, as it informed defense counsel of Torain's modified sentence and the existence of the letter on behalf of Torain as soon as it learned of them. The trial court therefore declined once more to either dismiss the case or remove Torain as a witness. The defendant was ultimately acquitted of

---

1. The letter's mention of "another homicide that occurred in Aurora" was a reference to the murder of Tait Ellingson.

2. *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

3. Although the trial court initially declined to impose discovery sanctions, it agreed to hear

further argument on the matter in the event defense counsel discovered evidence of bad faith.

4. On the date the continuance was granted, 27 days remained before the expiration of the original speedy trial deadline.

first degree murder but was convicted of the lesser charge of being an accessory to first degree murder, for which he was sentenced to twelve years in the Department of Corrections. Torain did not testify at the trial.

On appeal, the court of appeals vacated the conviction on the ground that the defendant's statutory right to a speedy trial was violated. Specifically, the court of appeals concluded that under these circumstances the prosecution should have been charged with the delay, requiring an attempt to reschedule the trial within the original speedy trial period if the defendant wished. The court of appeals further found that despite the defendant's objection to the trial being reset beyond the original speedy trial deadline, neither the prosecution nor the trial court attempted to reset the trial before that date. The People's petition for certiorari followed.[5]

## II.

Unlike the federal and state constitutional guarantees that it is designed to effect, Colorado's speedy trial statute, § 18–1–405, 6 C.R.S. (2000), specifies a certain time period within which a criminal defendant must be brought to trial or else the charges against him must be dismissed. § 18–1–405(1). Except as otherwise provided by statute, a criminal defendant must be brought to trial within six months of his plea of not guilty. *Id.* Among its various provisions for the calculation of this six-month time period, the statute expressly enumerates a number of "periods of time" that are to be excluded, § 18–1–405(6), including "[t]he period of any delay caused at the instance of the defendant." § 18–1–405(6)(f).

In addition, the statute makes specific provision for the effect of a request for a continuance on the speedy trial calculation. If a trial date has been fixed by the court and the prosecuting attorney requests and is granted a continuance, the period within which the defendant must be tried is not extended unless the defendant or his counsel agrees to the continuance in the manner prescribed by the statute. § 18–1–405(4). In that event,

the period for trial is expressly extended by the number of days between the date on which the continuance is granted and the date to which the trial is continued. *Id.* If, however, a trial date has been fixed by the court and the defendant requests and is granted a continuance, the period within which the defendant may be tried is expressly extended another six months after the date the continuance is granted. § 18–1–405(3).

The six-month speedy trial limitation and the sanction of dismissal for its violation are creations of the legislature. Whether a defendant's six-month speedy trial right has been violated is therefore a matter of construction and application of the statute. While a continuance of the trial granted by the court at the defendant's request clearly results in a "delay," which can be said to have been "caused at the instance of the defendant," having been requested by him, it is a particular circumstance or occurrence that is treated by the statute in a unique way. Unlike delays caused at the instance of the defendant generally, *see* § 18–1–405(6)(f), for which the period of delay is merely excluded from the six-month computation, a continuance of the trial date granted at the request of the defendant begins the calculation of an additional six-month period. § 18–1–405(3); *cf. People ex rel. Gallagher v. Dist. Court,* 933 P.2d 583, 589–90 (Colo.1997) (delay caused by defendant's absence is excluded under subsection 405(6)(d) but does not begin new six-month period under subsection 405(3)); *People v. Luevano,* 670 P.2d 1, 3–4 (Colo.1983) (court properly applied exclusion of subsection 405(6)(f) in addition to six-month extension of subsection 405(3) where conditions of defendant's deferred judgment created delay in addition to request for continuance). Also unlike subsection 405(6)(f), the key to interpreting subsection 405(3) is not whether the defendant caused the delay, *see People v. Bell,* 669 P.2d 1381, 1384 (Colo.1983), but whether a contin-

---

5. This court granted certiorari as to the following issue:

Whether the court of appeals erred in finding a statutory speedy trial violation, with the effect of reversing the defendant's conviction and barring

retrial, where defense counsel requested a continuance to further investigate a prosecutorial disclosure made three days before trial resulting in a new trial date outside the original speedy trial time period.

uance was granted at the defendant's request.

A "request" as contemplated by section 18–1–405(3) is a term of common understanding, without specific statutory definition. The statute does not specify any particular formalities or requirements for a "request," like those included in subsection 405(4) for an agreement to a continuance requested by the prosecuting attorney, and a request by defense counsel, even without the personal consent of the defendant, has been held to be sufficient. *See People v. Fleming,* 900 P.2d 19, 23 (Colo.1995); *cf. People ex rel. Gallagher,* 933 P.2d at 591 (distinguishing request by counsel who had represented defendant throughout from request by counsel who had no relationship with defendant and had not yet even been appointed). While continuances have also been held chargeable to a defendant within the meaning of subsection 405(3), even under certain circumstances in which no specific request was made by either him or his counsel, *see, e.g., People v. Scales,* 763 P.2d 1045 (Colo.1988) (where substitution of counsel requiring additional time to prepare for trial was caused by defendant's conduct), it is at least clear that a motion for a continuance by defense counsel in open court with the consent of the defendant is a request for a continuance, governed by subsection 405(3) of the statute, rather than merely a delay, governed by subsection 405(6)(f).

A good many factors may influence a defendant to make the tactical choice to request a continuance, including not only some for which he cannot be held responsible but also many over which he has absolutely no control. To the extent that he is disadvantaged by erroneous rulings of the court or violations of the law or procedural requirements by the prosecuting attorney, appropriate remedies are separately provided for those irregularities. *See, e.g.,* Crim. P. 16(III)(g) (providing for the imposition of sanctions to remedy failures to comply with discovery obligations)[6]. This court has long held that in the absence of a showing of bad faith on the part of the prosecutor, such as a last minute ploy to circumvent the requirements of the speedy trial provisions, a defendant's tactical decision to seek a continuance is chargeable to him. *Hampton v. Dist. Court,* 199 Colo. 104, 107–08, 605 P.2d 54, 56–57 (1980) (remand for hearing where the record demonstrated a prima facie case of bad faith by the prosecution in filing four habitual criminal counts immediately prior to beginning trial); *People v. Steele,* 193 Colo. 87, 94, 563 P.2d 6, 11 (1977) (request for continuance following late endorsement of witness chargeable to defendant in absence of bad faith).

Although the statute does not expressly include any qualification on the effect of a defense requested continuance, without protection from such bad faith or deliberate prosecutorial misconduct, a defendant's often difficult tactical choice to seek a continuance would become no choice at all. If section 18–1–405(3) were read to require a six-month extension of the speedy trial time period from the date of any continuance granted at the defendant's request, without some implicit qualification, the benefits of the statutory speedy trial right would always be vulnerable to prosecutorial efforts to "goad" the defendant into waiving that right. Like the analogous constitutional right of a defendant to complete his trial before a single jury, without being placed in jeopardy a second time, the statutory right to a speedy trial would become a hollow shell if the defendant could be forced to waive it by intentional prosecutorial misconduct designed expressly for that purpose. *Cf. Oregon v. Kennedy,* 456 U.S. 667, 679, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982) (defendant's motion for mistrial will not waive double jeopardy protection, as it otherwise would, if provoked by intentional prosecutorial or judicial misconduct); *People v. Espinoza,* 666 P.2d 555, 559 (Colo.1983) (applying *Oregon v. Kennedy* and noting prior Colorado case law permitting retrial in the absence of bad faith motivation of the prosecutor to trigger a mistrial).

On the other hand, any broader test that focused on the causes for the defendant's choice rather than the motivation of the pros-

---

6. Neither the scope of a trial court's authority to impose discovery sanctions nor the propriety of the trial court's discovery rulings in this case is before us here.

ecutor would blur the legislature's distinction between a request for continuance and a delay caused at the instance of the defendant. It would also be extremely difficult to apply with any consistency and would almost inevitably make courts more loath to grant defense requests for continuances following untimely disclosures, endorsement of witnesses, or filing of charges by the prosecution. *Cf. Oregon v. Kennedy*, 456 U.S. at 676, 102 S.Ct. 2083 ("Knowing that the granting of the defendant's motion for mistrial would all but inevitably bring with it an attempt to bar a second trial on grounds of double jeopardy, the judge presiding over the first trial might well be more loath to grant a defendant's motion for mistrial.") Additionally, any broader standard for treating a request for continuance as having been impermissibly forced by the prosecution would create the anomalous prospect of barring criminal prosecutions because of prosecutorial omissions or deficiencies discovered before trial that would not even bar a retrial if they had become apparent only after the trial began.

▮ The trial court's finding in this case that neither the detectives nor the prosecution acted in bad faith was well supported by the record and was not criticized by the court of appeals. Instead the court of appeals treated the continuance as a delay and found that it was caused by the prosecution rather than at the instance of the defendant. Although the defendant clearly requested a continuance, the appellate court found that he did not "waive his right to a speedy trial," 12 P.3d at 320, because he "unequivocally objected to a continuance outside the speedy time window." *Id.* On that basis it distinguished this court's jurisprudence requiring that a continuance be charged to the defendant as a tactical choice, in the absence of prosecutorial bad faith.

Contrary to the understanding of the court of appeals, this court has not before held that a request for continuance by the defendant may be charged to someone other than the defendant in the absence of bad faith misconduct, or that the statutory consequences of requesting a continuance can be avoided by

objecting to them. Unlike the defendant in this case, the defendant in *People ex rel. Gallagher v. Dist. Court*, never requested a continuance. Although this court recognized that a request by a defendant's counsel can be an adequate request pursuant to subsection 405(3) under some circumstances, a representation by the counsel in *Gallagher* that he could not accept the appointment to represent the defendant unless the trial were postponed, without also seeking the defendant's consent to waive his right to speedy trial, was not such a circumstance. 933 P.2d at 585, 591. Similarly, in *People v. Arledge*, neither the defendant nor his counsel requested a continuance of the trial date, and this court held merely that a delay could not be charged to the defendant where the trial court demanded that he execute a waiver of his speedy trial rights after announcing that it was granting his motion to recuse.[7] 938 P.2d 160, 166-67 (Colo.1997). Finally, in both *Hampton* and *Steele*, the defendants, like the defendant in this case, objected to the prosecution's lack of timeliness that led to their requests for continuance, and the holding in neither case was based on a failure to preserve the issue for appeal.

### III.

In the absence of any bad faith attributable to the prosecution's late disclosure of the letter bearing on the credibility of one of its prospective witnesses, the legal consequence of defense counsel's request for a continuance pursuant to section 18–1–405(3) was to extend the period within which trial could be commenced for an additional six months from the date of the continuance. Because the defendant's trial was commenced within that period, the judgment of the court of appeals is reversed and the case is remanded for further proceedings consistent with this opinion.

---

7. The trial court never considered the waiver a request for continuance pursuant to subsection 18–1–405(3), and instead advised the defendant about the exclusion for delays caused at the instant of the defendant pursuant to subsection 405(6)(f).