Opinions of the Colorado Supreme Court are available to the
public and can be accessed through the Judicial Branch's homepage at
http://www.courts.state.co.us. Opinions are also posted on the
Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE
February 21, 2017

## 2017 CO 12

**No. 14SC218, <u>Nagi v. People</u>—Criminal Trials—Continuances—Speedy Trial.**

Nagi sought review of the court of appeals' judgment affirming his conviction and sentence for sexual assault on a child by one in a position of trust. <u>See</u> <u>People v. Nagi</u>, 2014 COA 12, ___ P.3d ___. In addition to rejecting his challenge to the legality of his sentence, the court of appeals rejected the defendant's assertion that he was denied his statutory right to a speedy trial, as prescribed by section 18-1-405, C.R.S. (2016). The defendant had argued that the district court lacked sufficient grounds to justify ordering a competency evaluation, and that the period during which the defendant was under observation or examination was therefore not properly excluded from the calculation of the time within which trial was statutorily required. With one member of the panel dissenting, the appellate court found that the district court did not abuse its discretion in ordering the evaluation, notwithstanding its reference to the defendant's choice to proceed pro se as at least one of the reasons for questioning his competency, and that the evaluation period was therefore properly excluded and the defendant's statutory speedy trial right was not violated.

The supreme court affirmed, holding that because section 18-1-405, on its face, mandates exclusion from the defendant's speedy trial computation of any period during which he was actually being examined for competency, without regard for the necessity or propriety of the court's order requiring such an examination, the defendant was brought to trial within the statutorily calculated six-month period. In the absence of any specific assertion or indication in the record that the district court's order was entered in bad faith, for the purpose of circumventing the statutory speedy trial mandate or otherwise depriving the defendant of a protected interest, rather than from any concern for the defendant's rights or the integrity of the judicial process, the defendant's right to a speedy trial was not violated.

# The Supreme Court of the State of Colorado

2 East 14th Avenue • Denver, Colorado 80203

## 2017 CO 12

### Supreme Court Case No. 14SC218
*Certiorari to the Colorado Court of Appeals*
Court of Appeals Case No. 12CA4

#### Petitioner:

Farouk Nagi,

v.

#### Respondent:

The People of the State of Colorado.

### Judgment Affirmed
*en banc*
February 21, 2017

**Attorneys for Petitioner:**
Law Office of Ingrid J. DeFranco
Ingrid J. DeFranco
*Brighton, Colorado*

**Attorneys for Respondent:**
Cynthia H. Coffman, Attorney General
Ryan A. Crane, Assistant Attorney General
*Denver, Colorado*

**JUSTICE COATS** delivered the Opinion of the Court.
**JUSTICE MÁRQUEZ** dissents.

¶1    Nagi sought review of the court of appeals' judgment affirming his conviction and sentence for sexual assault on a child by one in a position of trust. See People v. Nagi, 2014 COA 12, ___ P.3d ___. In addition to rejecting his challenge to the legality of his sentence, the court of appeals rejected the defendant's assertion that he was denied his statutory right to a speedy trial, as prescribed by section 18-1-405, C.R.S. (2016). The defendant had argued that the district court lacked sufficient grounds to justify ordering a competency evaluation, and that the period during which the defendant was under observation or examination was therefore not properly excluded from the calculation of the time within which trial was statutorily required. With one member of the panel dissenting, the appellate court found that the district court did not abuse its discretion in ordering the evaluation, notwithstanding its reference to the defendant's choice to proceed pro se as at least one of the reasons for questioning his competency, and that the evaluation period was therefore properly excluded and the defendant's statutory speedy trial right was not violated.

¶2    Because section 18-1-405, on its face, mandates exclusion from the defendant's speedy trial computation of any period during which he was actually being examined for competency, without regard for the necessity or propriety of the court's order requiring such an examination, the defendant was brought to trial within the statutorily calculated six-month period. In the absence of any specific assertion or indication in the record that the district court's order was entered in bad faith, for the purpose of circumventing the statutory speedy trial mandate or otherwise depriving the defendant

2

of a protected interest, rather than from any concern for the defendant's rights or the integrity of the judicial process, the judgment of the court of appeals is affirmed.

## I.

¶3    Farouk Nagi was charged with one count of sexual assault on a child by one in a position of trust, committed as part of a pattern of abusing his stepdaughter, beginning when she was thirteen years old and continuing until the abuse was reported when she was fifteen years old. The jury convicted him as charged, and he was sentenced to an indeterminate term of twelve years to life in the custody of the Department of Corrections.

¶4    Just prior to the commencement of his August 31, 2011 trial, a newly appointed defense counsel moved to dismiss the charge against the defendant on the ground that his statutory right to a speedy trial had been violated. Counsel reasoned that a two-month period during which the defendant was being examined for competency should not have been excluded from the court's computation of the six-month period statutorily permitted for trial for the reason that the court lacked lawful justification for ordering the competency exam, and if the period during which the defendant was being examined had not been excluded, the time permitted for trial would already have elapsed before his trial commenced. The district court denied the motion, and its denial was upheld by the court of appeals.

¶5    By June 20, the day before the original trial setting, when the district court first raised the issue of competency and ordered an evaluation of the defendant, the court had presided over a preliminary hearing and, in the immediately preceding three

3

weeks, over a series of pre-trial conferences at which the defendant vacillated between accepting a continuance for further preparation by either his public defender or an alternate defense counsel, on the one hand, and declining to accept any continuance in favor of proceeding pro se, on the other. By the close of the first pre-trial conference, the defendant appeared to have agreed to a continuance for the appointment of a new defense counsel, but by the second pre-trial conference he had returned to a position of either remaining with his original counsel, if that counsel would go to trial without a continuance, or proceeding pro se, in the event the former course of action was not a viable option. After setting the matter over until the day before the original trial setting, and upon hearing from both defense counsel and the defendant—from the former that he could not proceed without a continuance and from the latter that he therefore demanded to proceed pro se—the district court ordered a competency evaluation and vacated the trial setting. The court also declined any further negotiation when the defendant countered with a proposal to accept alternate defense counsel with a continuance of no more than three months.

¶6    As the court of appeals subsequently noted, although the district court's brief explanation for its decision to order a competency evaluation expressly referenced what it considered to be the defendant's questionable decision to represent himself in a matter involving a potential life sentence, it also referenced the series of hearings over the preceding weeks and the court's concern that, based on the defendant's behavior and decision-making, he was not acting competently. In greater detail, the court of appeals specified various statements of the defendant at those hearings it considered to

4

reveal ample grounds for believing that he may have been incompetent, including such things as his wild accusations of partying and collusion between his counsel and the prosecution; his assertion that the charges against him were baseless, that his stepdaughter's statements were actually written by a police detective, and that his counsel's investigation was fake; his claim to have inspiration in his veins as the result of his Semitic heritage and his willingness to proceed without a defense in acceptance of "whatever God [had] written for [him];" and finally his vacillation between contradictory stances regarding his representation by counsel.

¶7    On the basis of these findings, the court of appeals concluded that the district court had "reason to believe" the defendant was incompetent and consequently that it did not abuse its discretion in ordering the evaluation. It therefore further concluded that the time during which the defendant was being evaluated was properly excluded from the computation of the statutory speedy trial period. We granted the defendant's petition for a writ of certiorari.

## II.

¶8    Unlike the federal and state constitutional guarantees that it is designed to effect, Colorado's speedy trial statute, § 18-1-405, C.R.S. (2016), specifies a certain time period within which a criminal defendant must be brought to trial or else the charges against him must be dismissed with prejudice to refile. § 18-1-405(1). Except as otherwise provided by the statute, a criminal defendant must be brought to trial within six months of his plea of not guilty. Id. Among its various specifications for the calculation of this six-month time period, the statute expressly enumerates a number of

5

"periods of time" that are to be excluded, see § 18-1-405(6), including "[a]ny period during which the defendant is incompetent to stand trial, or is unable to appear by reason of illness or physical disability, or is under observation or examination at any time after the issue of the defendant's mental condition, insanity, incompetency, or impaired mental condition is raised," § 18-1-405(6)(a).

¶9     This six-month speedy trial requirement and the sanction of dismissal for its violation are entirely creatures of statute.  Answering the question whether the statutory mandate has been violated therefore calls, first and foremost, for an interpretation of the language of the statute itself.  While a number of intrinsic and extrinsic aids to construction are available to assist in determining which among more than one reasonable interpretation of particular statutory language best represents the meaning intended by the enacting legislature, statutory language that is susceptible of no more than a single reasonable understanding must, at least in the absence of irreconcilable conflict with another statute, be applied as written.  See People v. Jones, 2015 CO 20, ¶¶ 10–11, 346 P.3d 44, 48.

¶10    With regard to the exclusion of any period during which the defendant is under observation or examination for competency, the statutory language leaves little room for construction. Subsection 405(6)(a) explicitly mandates that any period during which the defendant is under observation or examination after the issue of his incompetency has been raised is to be excluded from the computation of the six-month time period within which he must be brought to trial.  The statutory language in no way suggests

6

that the exclusion of this observation period is contingent upon the necessity or propriety of the trial court's choice to raise the issue or to order an examination.

¶11    Section 16-8.5-102(2), C.R.S. (2016), enumerates various ways in which the question of the defendant's competency may be brought to the court's attention, and it mandates that the trial court suspend the proceedings and determine competency, in a manner prescribed by statute, whenever the trial judge has "reason to believe" that the defendant is incompetent to proceed.  Apparently because the trial court indicated that the defendant's actions gave it "reason to believe" he was not competent, and it therefore considered itself statutorily obligated to suspend the proceeding and determine the defendant's competency, both the defendant and the appellate court focused their attention on the question whether the trial judge actually had sufficient reason to believe that the defendant was incompetent to proceed.  As a result, the intermediate appellate court assumed, or at least failed to address the question whether, the period during which the defendant was undergoing observation for competency was excludable only if the competency exam were statutorily mandated.

¶12    Initially, it must be emphasized that section 16-8.5-102(2), in conformity with constitutional dictate, see Godinez v. Moran, 509 U.S. 389, 401 n.13 (1993), imposes a duty on a trial court to suspend proceedings, under the specified circumstances, until it has determined that the criminal defendant is competent to proceed; however, the statute does not purport to impose any limitation on the court's discretion to do so. Given the clear obligation of courts to protect the fundamental rights of criminal defendants, as well as ensure the integrity of judicial proceedings and ensure that their

7

judgments remain intact on appeal, see Wheat v. United States, 486 U.S. 153, 159–61 (1988); People v. Frisco, 119 P.3d 1093, 1095 (Colo. 2005); Rodriguez v. Dist. Court, 719 P.2d 699, 706 (Colo. 1986), it is not surprising that trial courts would be permitted, if not actually encouraged, to exercise their discretion in furtherance of these goals, even where the suspension of proceedings for a competency determination may not be mandated. To understand the "reason to believe" prescription of the statute as a specific standard of proof, or quantum of doubt, applicable to both the requirement to evaluate competency and the discretion to do so, as the defendant and court of appeals suggest, would effectively eliminate all trial court discretion in the matter, permitting a court to suspend proceedings and order a competency examination of the defendant only when doing so would actually be required.

¶13    This court has never been called upon to articulate the specific considerations impacting a court's discretion to order a criminal defendant to submit to a competency exam, as distinguished from a statutory or constitutional obligation to do so, and unlike those situations in which a separate privacy or liberty interest may be at stake, see, e.g., Cappelli v. Demlow, 935 P.2d 57, 62–63 (Colo. App. 1996) (civil rights action against judge presiding over criminal prosecution challenging involuntary commitment for competency evaluation), we are not called upon to do so here. Not only does the language of subsection 405(6)(a) fail to suggest that its exclusion is contingent upon either the necessity or propriety of the trial court's evaluation order, but as we have indicated elsewhere, see, e.g., People v. Duncan, 31 P.3d 874, 877–78 (Colo. 2001), for such an absolute bar to prosecution to rest on the ultimate correctness of trial court

8

rulings ostensibly entered for the defendant's benefit could well redound to the disadvantage of both the defendant and the integrity of judicial proceedings. Especially where the erroneous failure to suspend proceedings and determine the defendant's competency could result at most in a reversal of conviction but the erroneous suspension of proceedings for a determination of competency would require the dismissal of all charges with prejudice to refile, courts might understandably be loath to risk the latter rather than the former. See id.

¶14 Neither does interpreting the exclusion of subsection 405(6)(a) to mean precisely what it says create an irreconcilable conflict with the purposes of the speedy trial provision as a whole or subject criminal defendants to (even this minimal) delay at will. With regard to related provisions, we have long held, by analogy to United States Supreme Court jurisprudence concerning the effect of a motion for mistrial on the constitutional bar against double jeopardy, see Oregon v. Kennedy, 456 U.S. 667 (1982), that requests for a continuance forced in bad faith or other judicial or prosecutorial misconduct will not be attributable, for purposes of the speedy trial statute, to the defendant. See Duncan, 31 P.3d at 877–78 (request for continuance following prosecution's late disclosure of a letter bearing on the credibility of one of its prospective witnesses chargeable to defendant in absence of bad faith); Hampton v. Dist. Court in & for Jefferson Cty., 605 P.2d 54, 56–57 (Colo. 1980) (remand for hearing where the record demonstrated a prima facie case of bad faith by the prosecution in filing four habitual criminal counts immediately prior to beginning trial); People v. Steele, 563 P.2d 6, 11 (Colo. 1977) (request for continuance following late endorsement

9

of witness chargeable to defendant in absence of bad faith).  Similarly, implicit in the exclusion of subsection 405(6)(a) for any period of observation after the issue of the defendant's incompetency has been raised is the requirement that the issue have been raised in good faith.  Should a trial court act in other than good faith, ordering a competency evaluation for purposes of delay or to deprive the defendant of some other right to which he would be entitled, exclusion of the time required for such an evaluation would simply not be within the contemplation of the statute.

¶15     The defendant does not assert, and the record clearly would not support, such a finding of bad faith in this case.  Whether or not the defendant's conduct was such as to <u>compel</u> suspension of the proceedings and an order for a competency evaluation, as both the trial and appellate courts apparently believed, it clearly provided a good faith basis for raising the question of the defendant's competency.  As the court of appeals indicated, in addition to the trial court's belief that the defendant was not making a rational choice concerning representation, in the final few weeks before the order at issue here, his aberrant behavior—including such things as his wild accusations of collusion between his counsel and the prosecution, his questioning of his counsel's integrity regarding ongoing investigation, his claim that he was inspired, his fatalism concerning God's will, and his vacillation between contradictory stances regarding his desire for representation by counsel—provided ample grounds for any court to at least question his competency.

¶16     The defendant does not suggest, as an ulterior motive for purposeful delay, any inability or unwillingness of the prosecution or court to go forward with his trial as

10

scheduled. Quite the contrary, in his briefing to this court, he acknowledges the inherent tension among his rights to counsel and self-representation, his right not to be tried while incompetent, and his right to a speedy trial; and he openly concedes the court's attempt to balance these rights, merely finding fault with what he considers to be the court's unwarranted presumption that his election to represent himself rather than cede his speedy trial right indicated a mental defect and its allocation of undue weight to his right to proceed only if competent. Not only is there no suggestion that the court acted in bad faith, but by exercising its discretion as it did, the trial court was able to ensure both that the defendant was not permitted to waive his right to counsel or be tried while incompetent and that he was ultimately permitted his choice to represent himself. While his trial was delayed some two months beyond the date of its original setting, the defendant was nevertheless brought to trial within the statutorily calculated six-month period.

## III.

¶17 Because section 18-1-405, on its face, mandates exclusion from the defendant's speedy trial computation of any period during which he was actually being examined for competency, without regard for the necessity or propriety of the court's order requiring such an examination, the defendant was brought to trial within the statutorily calculated six-month period. In the absence of any specific assertion or indication in the record that the district court's order was entered in bad faith, for the purpose of circumventing the statutory speedy trial mandate or otherwise depriving the defendant

11

of a protected interest rather than from any concern for the defendant's rights or the integrity of the judicial process, the judgment of the court of appeals is affirmed.

**JUSTICE MÁRQUEZ** dissents.

JUSTICE MÁRQUEZ, dissenting.

¶18    Three times, the trial court explained on the record why it suspended the proceedings and ordered Mr. Nagi to undergo a competency evaluation:  because Nagi wanted to represent himself in a case that could result in an indeterminate life sentence. Nagi's choice to proceed pro se may well have appeared unwise.  But his desire to exercise his constitutional right of self-representation cannot, without more, constitute the statutorily required "reason to believe" that a defendant is "incompetent to proceed" such that a court may suspend proceedings and order a defendant to undergo a competency evaluation.  §§ 16-8.5-101(11), -102(2)(a), C.R.S. (2016).  The majority does not even try to defend the trial court's actual explanation for ordering the competency evaluation—because it cannot.  Instead, like the court of appeals majority, it cobbles together snippets of Nagi's statements from the record to conjure, post hoc, a "good faith" basis to question Nagi's competency and justify the evaluation.  Maj. op. ¶ 15; People v. Nagi, 2014 COA 12, ¶¶ 20–23, ___ P.3d ___.  Yet the trial court's own multiple explanations for its decision reveal that it did not rely on any of these other statements or actions when it ordered the evaluation.

¶19    Even more troubling, the majority concludes that section 18-1-405(6)(a), C.R.S. (2016), requires tolling of a defendant's speedy trial period for any period when the defendant is undergoing a competency evaluation—"without regard for the necessity or propriety of the court's order requiring such an examination."  Maj. op. ¶ 2.  The upshot of today's ruling is that no matter how baseless or unjustified—indeed, even if it infringes a defendant's constitutional right to self-representation—a trial court's

1

decision to order a competency evaluation automatically tolls a defendant's speedy trial period absent a showing that the trial court acted in bad faith. Because I believe the majority's construction of the statutory scheme fails to give any meaning to the plain language of the phrase "reason to believe" a defendant is incompetent to proceed, in section 16-8.5-102(2)(a), and because I am unaware of any support for the majority's standard requiring a defendant to establish a <u>court's</u> "bad faith" to obtain relief for a violation of the defendant's speedy trial rights, I respectfully dissent.

¶20 Colorado's speedy trial statute serves to implement a defendant's federal and state constitutional right to a speedy trial. U.S. Const. amend. VI; Colo. Const. art. II, § 16; <u>People v. Deason</u>, 670 P.2d 792, 796 (Colo. 1983). The statute requires dismissal of charges if a defendant is not tried within six months of entering a plea of not guilty, unless the period of delay qualifies for exclusion from the speedy trial period under the statute. § 18-1-405(1); <u>People v. Arledge</u>, 938 P.2d 160, 165 (Colo. 1997). The burden of compliance with the speedy trial statute lies with the prosecution and the trial court. <u>People v. Runningbear</u>, 753 P.2d 764, 766 (Colo. 1988); <u>Marquez v. Dist. Court</u>, 613 P.2d 1302, 1303–04 (Colo. 1980). This burden includes "making a record sufficient for an appellate court to determine statutory compliance." <u>Marquez</u>, 613 P.2d at 1304 (holding that the statutory period could not be tolled for a granted continuance, requested by the prosecution, because the record was insufficient: the trial court did not "make specific findings establishing the statutory elements for [this court's] review").

¶21 Section 18-1-405(6)(a) requires tolling of the speedy trial period when the defendant is "under observation or examination at any time after the issue of the

2

defendant's . . . incompetency . . . is raised." The majority construes this language to require tolling of <u>any</u> period in which a defendant is under observation or examination, "without regard for the necessity or propriety of the court's order requiring such an examination." Maj. op. ¶ 2. I disagree.

¶22 Section 18-1-405(6)(a) refers to periods of observation or examination occurring when the issue of a defendant's "incompetency . . . is raised." Importantly, the legislature has established that a defendant is "incompetent to proceed" in section 16-8.5-101(11) when, as a result of a mental or developmental disability, the defendant does not have sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding in order to assist in the defense or when, as a result of a mental or developmental disability, the defendant does not have a rational and factual understanding of the criminal proceedings. <u>See also</u> <u>Dusky v. United States</u>, 362 U.S. 402, 402 (1960) (stating that the test for competency is "whether [the defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him").

¶23 Equally importantly, the legislature has made clear that "[t]he question of a defendant's competency to proceed shall be raised in the following manner": namely, where "the judge has reason to believe that the defendant is incompetent to proceed." § 16-8.5-102(2)(a). In short, the language of section 18-1-405(6)(a) cannot be read in isolation. That provision expressly refers to periods of observation or examination occurring when the issue of a defendant's "incompetency . . . is raised." In turn, the

3

issue of a defendant's competency "shall be raised" by a court only where the judge has "reason to believe" the defendant is incompetent. If there exists no "reason to believe" the defendant is incompetent, there exists no basis for the court to order, sua sponte, an evaluation under section 16-8.5-102(2)(a), and consequently, no basis to exclude the period for the (unjustified) evaluation from the defendant's speedy trial period under section 18-1-405(6)(a).

¶24 The majority's construction of section 18-1-405(6)(a) not only absolves the trial court of its obligation to comply with the statutory standard for ordering a competency evaluation—but in doing so, affords no weight to a defendant's speedy trial rights. To the extent the majority fears that a different outcome in this case could dissuade trial courts from ordering exams, maj. op. ¶ 13, I disagree. A "reason to believe" is a low threshold. A trial court can point to particular statements, actions, or irrational behavior, but must simply articulate an objective, reasonable basis for its belief that the defendant is "incompetent to proceed" as that phrase is defined in section 16-8.5-101(11). Cf. Marquez, 613 P.2d at 1304. That is, the "reason" articulated must relate to the judge's belief that the defendant is unable to consult rationally with his attorney to assist in his defense, or that he does not have "a rational and factual understanding of the criminal proceedings." § 16-8.5-101(11).

¶25 The majority concludes that the "reason to believe" standard in section 16-8.5-102(2)(a) does not limit a trial court's discretion in ordering a competency evaluation, and moreover, if it did, it would eliminate all such discretion. See maj. op. ¶ 12. Again, I disagree. A "reason to believe" is an objective standard. Hence, if

4

the trial court does not articulate an objective and specific "reason to believe" that the defendant was incompetent, then there exists no justifiable basis for the court's order directing the defendant to undergo a competency evaluation, and consequently, the speedy trial period cannot be tolled for that unjustified evaluation. This rule in no way eliminates the court's discretion. It only means that a court cannot abuse that discretion by failing to articulate a "reason to believe" the defendant is incompetent — that is, that the defendant is unable to consult rationally with his attorney to assist in his defense, or lacks a rational and factual understanding of the criminal proceedings. § 16-8.5-101(11).

¶26    Here, the only specific statement, action, or decision the trial court expressly relied on was Nagi's desire to represent himself at trial. Yet the Sixth Amendment and the Colorado Constitution guarantee the right of a criminal defendant to represent himself at trial. Faretta v. California, 422 U.S. 806, 819 (1975) ("The Sixth Amendment does not provide merely that a defense shall be made for the accused; it grants to the accused personally the right to make his defense."); Colo. Const. art. II, § 16 ("the accused shall have the right to appear and defend in person"); People v. Romero, 694 P.2d 1256, 1264 (Colo. 1985) ("The right of self-representation, therefore, is personal to the defendant and may not be abridged by compelling a defendant to accept a lawyer when he desires to represent himself. . . . Because the right of self-representation furthers the basic value of personal autonomy, it is the defendant who must decide whether it is to his advantage to have counsel in his particular case."). Because this constitutional right endures even when its exercise is clearly inadvisable, a defendant's mere invocation of his right to self-representation cannot, without more, constitute a

5

"reason to believe" that a defendant is incompetent under section 16-8.5-102(2)(a). Indeed, the People concede in their answer brief that if a trial court bases its decision to order a competency evaluation solely on a defendant's exercise of his right to self-representation, the trial court abuses its discretion under the "reason to believe" standard. But that is precisely what happened here.

¶27 Nagi made abundantly clear that he did not wish to waive his speedy trial rights. At a June 1 pre-trial conference, he opposed the continuance his public defender requested and stated, "I don't want to waive my right to speedy trial . . . . Your Honor, I want to have my trial on June the 21st." Nagi told the trial court that he wanted his defense counsel to continue to represent him "[o]n one condition, I'm not going to waive my constitutional right to a speedy trial." After further discussion, the court agreed to take steps to appoint alternate defense counsel but warned Nagi that it was unlikely alternate counsel would be ready for trial by June 21. Nagi confirmed that if alternate defense counsel was not prepared to go to trial on June 21, then he would waive his right to a speedy trial. However, before the end of the hearing, Nagi asked whether his request would still be considered at the next hearing if he changed his mind and wished to represent himself.

¶28 At a June 6 pre-trial conference, Nagi appeared without his public defender but with alternate defense counsel. Nagi told the court he wanted the public defender to continue to represent him, unless the public defender would not be ready on June 21, in which case he wanted to represent himself. Likewise, Nagi did not wish to accept representation from alternate defense counsel unless counsel could be prepared for trial

6

on June 21. After further discussion, the court clarified that Nagi wished to accept representation only if he could go to trial as scheduled on June 21; otherwise he would represent himself.

¶29 Although Nagi wavered about whether to proceed with counsel, his concerns and distrust of the system were not atypical for criminal defendants. See, e.g., United States v. Alden, 527 F.3d 653, 659–60 (7th Cir. 2008) ("Many defendants express dissatisfaction with counsel, assert that their rights have been denied at every turn . . . [and] demonstrate that they do not understand how the legal system handles witnesses and investigators . . . . Many defendants even dismiss their lawyers because they suppose without justification that more should be done to assist them." (internal quotation marks omitted)). For Nagi, whose country of origin is Yemen, this distrust may also have stemmed from a lack of familiarity with the U.S. legal system.

¶30 Critically, the only justification actually articulated by the trial court was its concern that Nagi was incompetent because Nagi stated he wanted to represent himself at trial; the trial court did not identify any other irrational behavior before it ordered the evaluation. Both the timing of the trial court's decision to order the competency evaluation and its after-the-fact explanations reinforce the conclusion that Nagi's decision to represent himself was the trial court's sole basis for ordering the evaluation.

¶31 At no point prior to the June 20 pre-trial conference did the trial court, defense counsel, or the prosecution raise the issue of Nagi's competency. On June 20, Nagi appeared with alternate defense counsel, and the trial court did not actually inquire of counsel whether he was prepared to proceed. Instead, the court asked Nagi whether he

7

still wished to represent himself, and Nagi responded that he did. The court abruptly suspended the proceedings and ordered Nagi to undergo a competency evaluation:

> The [c]ourt is also going to order a competency evaluation. Mr. Nagi, based on your statements to me that [sic] the fact that you face an indeterminate life sentence, the [c]ourt does not believe that you're acting competently. I'm going to order a competency examination. I'm going to continue this matter for tomorrow at 8:30 for a competency advisement. You will not have a trial tomorrow, Mr. Nagi. I'm going to order that you be evaluated.

Nagi responded, "[y]our Honor, I'm not waiving my speedy trial," and "I think that's an excuse to delay my speedy trial . . . over my constitutional right."

¶32 On June 21, the day on which trial was originally scheduled, the court explained that its decision to order a competency evaluation was tied to Nagi's decision to represent himself:

> The [c]ourt has had some hearings on this case over the last couple of weeks. Mr. Nagi indicated to the [c]ourt, we had discussion on June 6th, maybe the week before that, he wanted to represent himself in this matter. The [c]ourt's concern, frankly, Mr. Nagi, based on the statements that you've made to me [is] that you're not making good decisions; . . . the fact that you would want to represent yourself in a case that the consequences to you can be an indeterminate life sentence with no legal training at all raises a concern with the [c]ourt that you are not acting competently. I have a duty, sir, to suspend the proceedings and determine whether or not you are, in fact, competent or incompetent if I have reason to believe that you are incompetent . . . . Again, based on your actions and your decision making, I am concerned that you are not acting competently at this time.

(Emphasis added.)

¶33 The Colorado Mental Health Institute report found Nagi competent to proceed. At a pre-trial hearing on August 24, alternate defense counsel moved to dismiss the charges against Nagi because the statutory speedy trial period had run as of July 24.

8

Counsel argued that, because there was no basis to find Nagi incompetent, the time taken to complete the evaluation should not toll his speedy trial period. The court again explained that its concern was based on Nagi's decision to represent himself:

> I think that the [c]ourt raised competency, the [c]ourt has the ability to do that . . . . And the [c]ourt felt it was appropriate, based on what was being stated to the [c]ourt by Mr. Nagi. The [c]ourt's concern was that he wanted to represent himself in a case, which, if convicted, would result in an indeterminate sentence. So the [c]ourt did not feel that he was making good decisions and felt it was appropriate to order a competency examination.

(Emphasis added.) Thus, on three separate occasions, the trial court identified Nagi's choice to represent himself as the basis for ordering the competency evaluation. The court did not specifically identify any other action, decision, or statement as its "reason to believe" Nagi was incompetent. Critically, "the trial court did not identify any concern that [Nagi] lacked a rational and factual understanding of the proceedings against him or was unable to consult with counsel." Nagi, ¶ 46 (Lichtenstein, J., dissenting).

¶34 Both the majority and the court of appeals rely on other parts of the record to uphold the trial court's decision to order the competency evaluation (e.g., Nagi's accusations that defense counsel was partying with the prosecutor, his statements that the charges are baseless, and his willingness to "accept what God has written" for him), see Nagi, ¶ 20; maj. op. ¶¶ 6, 15. In my view, these statements and actions simply reflect Nagi's dissatisfaction with counsel, distrust and misunderstanding of the judicial system, and legitimate religious beliefs—not an inability to consult with counsel or a lack of rational understanding of the proceedings "as a result of a mental disability or

developmental disability," § 16-8.5-101(11). In any event, we cannot simply disregard the only "reason to believe" actually articulated by the trial court. Instead, we must take the trial court at its word when it repeatedly explained that it ordered the competency evaluation because of its concerns about Nagi's decision to represent himself.

¶35 The irony here is that Nagi chose to represent himself specifically to avoid waiving his speedy trial rights and to proceed to trial on his scheduled trial date. The trial court's vague reference to "hearings on this case over the last couple of weeks" and previous "actions and . . . decision making," without articulating which of Nagi's previous actions, statements, or decisions it considered, does not suffice to establish a "reason to believe" Nagi was incompetent to proceed. In short, "[b]ecause the trial court did not base its order on the legal standard for competence, its order suspending the proceedings and directing [Nagi] to undergo a competency evaluation constituted an abuse of discretion." Nagi, ¶ 46 (Lichtenstein, J., dissenting). Because there was no "reason to believe" that Nagi was incompetent to proceed, there was no basis to order the evaluation under section 16-8.5-102(2)(a), and consequently, no basis to exclude the period for the (unjustified) evaluation from Nagi's speedy trial period under section 18-1-405(6)(a).

¶36 Finally, I take issue with the majority's conclusion that any period of time taken for a competency evaluation requires tolling absent a showing that the district court's order was entered in "bad faith, for the purpose of circumventing the statutory speedy trial mandate." Maj. op. ¶¶ 2, 17.

¶37 The majority's holding that tolling is unavailable only where the trial court orders an evaluation in "bad faith" effectively insulates all such decisions from review. This standard places defense counsel in the untenable (and unprecedented) position of having to question a trial court's motives to obtain relief. We assume trial courts carry out their judicial duties in good faith. The correct question on appellate review is not one of good faith or bad faith, but of error—in this context, abuse of discretion. The court's motive is irrelevant.

¶38 To justify its "bad faith" standard, the majority states that this court has held, for example, that "requests for continuance forced in bad faith or other judicial or prosecutorial misconduct" will not be attributable to the defendant and therefore will not toll the speedy trial period. Id. at ¶ 14.

¶39 However, the cases cited by the majority in support of this proposition address only alleged bad-faith conduct by the prosecution, not the court itself. See People v. Duncan, 31 P.3d 874, 878 (Colo. 2001) ("The trial court's finding in this case that neither the detectives nor the prosecution acted in bad faith was well supported by the record . . . ." (emphasis added)); Hampton v. Dist. Court, 605 P.2d 54, 56 (Colo. 1980) ("The central issue in this case involves the presence or absence of bad faith on the part of the prosecution in adding the habitual criminal charges." (emphasis added)); People v. Steele, 563 P.2d 6, 11 (Colo. 1977) ("There is no indication of bad faith on the part of the prosecutor in endorsing a witness on the day of trial." (emphasis added)). The majority, in my view, mischaracterizes our prior case law regarding bad faith in this context. Although we have addressed the effect of prosecutorial misconduct or bad

11

faith and its effect on the tolling of the speedy trial period, this court has not considered alleged instances of <u>judicial</u> misconduct or bad faith in this context. To the extent that the majority's standard requires defendants to establish a trial court's ill motives to preserve their speedy trial rights, such a burden is both unwarranted and unprecedented.

¶40 Trial courts must ensure that a defendant is competent to stand trial. And certainly mental illness is not always readily apparent, nor is a trial court equipped or even qualified to make a medical determination about a defendant's competency. However, a trial court cannot order a competency evaluation based solely on a defendant's decision to represent himself. The trial court in this case clearly (and understandably) believed that Nagi was making an unwise decision; however, an unwise decision is not, by itself, "reason to believe" that a defendant is mentally incompetent. Even assuming the trial court acted with the best intentions to protect Nagi from his own ill-advised desire to proceed pro se, based on the record before us, the trial court abused its discretion in ordering Nagi to undergo a competency evaluation on the eve of trial. In my view, the time taken for such an evaluation cannot toll the calculation of the statutory speedy trial period.

¶41 Our case law is clear that a speedy trial violation requires dismissal of the charges, regardless of a defendant's guilt. <u>See</u> <u>Watson v. People</u>, 700 P.2d 544, 549 (Colo. 1985) (reversing the judgment of conviction entered against the defendant by the district court where the speedy trial statute was violated); <u>People v. Castro</u>, 854 P.2d 1262, 1265–66 (Colo. 1993) (affirming the court of appeals' reversal of the defendant's

12

conviction where the trial court erroneously granted a continuance and the defendant's right to speedy trial was violated). Although such a result is drastic, particularly where the defendant has been found guilty of serious child sexual assault charges, the trial court proceeded without jurisdiction when it tried Nagi in violation of his rights under the speedy trial statute. See Hampton, 605 P.2d at 56. Therefore, I would reverse the judgment of the court of appeals and remand the case with directions to vacate Nagi's conviction.

I am authorized to state that JUSTICE HOOD and JUSTICE GABRIEL join in this dissent.