*876 JUSTICE COATS
delivered the Opinion of the Court.
¶ 1 Nagi sought review of the court of appeals’ judgment affirming his conviction and sentence for sexual assault on a child by one in a position of trust. See People v. Nagi, 2014 COA 12, — P.3d -. In addition to rejecting his challenge to the legality of his sentence, the court of appeals rejected-the defendant’s assertion that he was denied his statutory right to a speedy trial, as prescribed by section 18—1—405, C.R.S. (2016). The defendant had argued that the district court lacked sufficient grounds to justify ordering a competency evaluation, and that the period during which the defendant was under observation or examination was therefore not properly excluded from the calculation of the time within which trial was statutorily required. With one member of the panel dissenting, the appellate court found that the district court did not abuse its discretion in ordering the evaluation, notwithstanding its reference to the defendant’s choice to proceed pro se as at least one of the reasons for questioning his competency, and that the evaluation period was therefore properly excluded and the defendant’s statutory speedy trial right was not violated.
¶ 2 Because section 18-1-406, on its face, mandates exclusion from the defendant’s speedy trial computation of any period during which he was actually being examined for competency, without regard for the necessity or propriety of the court’s order requiring such an examination, the defendant was brought to trial within the statutorily calculated six-month period. In the absence of any specific assertion or indication in the record that the district court’s order was entered in bad faith, for the purpose of circumventing the statutory speedy trial mandate or otherwise depriving the defendant of a pi’otected interest, rather than from any concern for the defendant’s rights or the integrity of the judicial process, the judgment of the court of appeals is affirmed.
I.
¶3 Farouk Nagi was charged with one count of sexual assault on a child by one in a position of trust, committed as part of a pattern of abusing his stepdaughter, beginning when she was thirteen years old and continuing until the abuse was reported when she was fifteen years old. The jury convicted him as charged, and he was sentenced to an indeterminate term of twelve years to life in the custody of the Department of Corrections.
¶ 4 Just prior to the commencement of his August 31, 2011 trial, a newly appointed defense counsel moved to dismiss the charge against the defendant on the ground that his statutory right to a speedy trial had been violated. Counsel reasoned that a two-month period during which the defendant was being examined for competency should not have been excluded from the court’s computation of the six-month period statutorily permitted for trial for the reason that the court lacked lawful justification for ordering the competency exam, and if the period during which the defendant was being examined had not been excluded, the time permitted for trial would already have elapsed before his trial commenced. The district court denied the motion, and its denial was upheld by the court of appeals.
¶ 6 By June 20, the day before the original trial setting, when the district court first raised the issue of competency and ordered an evaluation of the defendant, the court had presided over a preliminary hearing and, in the immediately preceding three weeks, over a series of pre-trial conferences at which the defendant vacillated between accepting a continuance for further preparation by either his public defender or an alternate defense counsel, on the one hand, and declining to accept any continuance in favor of proceeding pro se, on the other. By the close of the first pre-trial conference, the defendant appeared to have agreed to a continuance for the appointment of a new defense counsel, but by the second pre-trial conference he had returned to a position of either remaining with his original counsel, if that counsel would go to trial without a continuance, or proceeding pro se, in the event the former course of action was not a viable option. After setting the matter over until the day before the *877 original trial setting, and upon hearing from both defense counsel' and the defendant— from the former that he could not proceed without a continuance and from the latter that he therefore demanded to proceed pro se—the district court ordered a competency evaluation and vacated the trial setting. The court also declined any further negotiation when the defendant countered with a proposal to accept alternate defense counsel with a continuance of no more than three months.
¶ 6 Ás the court of appeals subsequently noted, although the district court’s brief explanation for its decision to order a competency evaluation expressly referenced what it considered to be the defendant’s questionable decision to represent himself in a matter involving a potential life sentence, it also referenced the series of hearings over the preceding weeks and the court’s concern that, based on the defendant’s behavior and decision-making, he was not acting competently. In greater detail, the court of appeals specified various statements of the defendant at those hearings it considered to reveal ample grounds for believing that he may have been incompetent, including such things as his wild accusations of partying and collusion between his counsel and the prosecution; his assertion that the charges against him were baseless, that his stepdaughter’s statements were actually written by a police detective, and that his counsel’s investigation was fake; his claim to have inspiration in his veins as the result of his Semitic heritage and his willingness to proceed without a defense in acceptance of “whatever God [had] written for [him];” and finally his vacillation between contradictory stances regarding his representation by counsel.
¶7 On the basis of these findings, the court of appeals concluded that the district court had “reason to believe” the defendant was incompetent and consequently that it did not abuse its discretion in ordering the evaluation, It therefore further concluded that the time during which the defendant was being evaluated was properly excluded from the computation of the statutory speedy trial period. We granted the defendant’s petition for a writ of certiorari.
II.
¶ 8 Unlike' the federal and state constitutional guarantees that it is designed to effect, Colorado’s speedy trial statute, § 18-1-405, C.R.S, (2016), specifies a certain time period within which a criminal defendant must be brought to trial or else the charges against him must be dismissed with prejudice to refile. § 18-1-405(1). Except as otherwise provided by the statute, a criminal defendant must be brought to trial within six months of his plea of not guilty. Id. Among its various specifications for the calculation of this six-month time period, the statute expressly enumerates a number of “periods of time” that are to be excluded, see § 18-1-405(6), including “[a]ny period during which the defendant is incompetent to stand trial, or is unable to appear by reason of illness or physical disability, or is under observation or examination at any time after the issue of the defendant’s mental condition, insanity, incompetency, or impaired mental condition is raised,” § 18-l-405(6)(a).
, ¶ 9 This, six-month speedy trial requirement and the sanction of dismissal for its violation are entirely creatures of statute. Answering the question whether the statutory mandate has been violated therefore calls, first and foremost, for an interpretation of the language of the statute itself. While a number of intrinsic and extrinsic aids to construction are available to assist in determining which among more than one reasonable interpretation of particular statutory language best represents the meaning intended by the enacting legislature, statutory language that is susceptible of no more than a single reasonable understanding must, at least in the absence of irreconcilable conflict with another statute, be applied as written. See People v. Jones, 2015 CO 20, ¶¶ 10-11, 346 P.3d 44, 48.
¶ 10 With regard to the exclusion of any period during which the defendant is under observation or examination for competency, the statutory language leaves little room for construction. Subsection 405(6)(a) explicitly mandates that any period during which the defendant is under observation or examination after the issue of his ineompe- *878 tency has been raised is to be excluded from the computation of the six-month time period within which he must be brought to trial. The statutory language in no way suggests that the exclusion of this observation period is contingent upon the necessity or propriety of the trial court’s choice to raise the issue or to order an examination.
¶ 11 Section 16-8.5-102(2), C.R.S. (2016), enumerates various ways in which the question of the defendant’s competency may be brought to the court’s attention, and it mandates that the trial court suspend the proceedings and determine competency, in a manner prescribed by statute, whenever the trial judge has “reason to believe” that the defendant is incompetent to proceed. Apparently because the trial court indicated that the defendant’s actions gave it “reason to believe” he was not competent, and it therefore considered itself statutorily obligated to suspend the proceeding and determine the defendant’s competency, both the defendant and the appellate court focused their attention on the question whether the trial judge actually had sufficient reason to believe that the defendant was incompetent to proceed. As a result, the intermediate appellate court assumed, or at least failed to address the question whether, the period during which the defendant was undergoing observation for competency was excludable only if the competency exam were statutorily mandated.
¶ 12 Initially, it must be emphasized that section 16-8.5-102(2), in conformity with constitutional dictate, see Godinez v, Moran, 509 U.S. 389, 401 n.13, 113 S.Ct. 2680, 125 L.Ed.2d 321 (1993), imposes a duty on a trial court to suspend proceedings, under the specified circumstances, until it has determined that the criminal defendant is competent to proceed; however, the statute does not purport to impose any limitation on the court’s discretion to do so. Given the clear obligation of courts to protect the fundamental rights of criminal defendants, as well as ensure the integrity of judicial proceedings and ensure that them judgments remain intact on appeal, see Wheat v. United States, 486 U.S. 153, 159-61, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988); People v. Frisco, 119 P.3d 1093, 1095 (Colo. 2005); Rodriguez v. Dist. Court, 719 P.2d 699, 706 (Colo. 1986), it is not surprising that trial courts would be permitted, if not actually encouraged, to exercise their discretion in furtherance of these goals, even where the suspension of proceedings for a competency determination may not be mandated. To understand the “reason to believe” prescription of the statute as a specific standard of proof, or quantum of doubt, applicable to both the requirement to evaluate competency and the discretion to do so, as the defendant and court of appeals suggest, would effectively eliminate all trial court discretion in the matter, permitting a court to suspend proceedings and order a competency examination of the defendant only when doing so would actually be required.
¶ 13 This court has never been called upon to articulate the specific considerations impacting a court’s discretion to order a criminal defendant to submit to a competency exam, as distinguished from a statutory or constitutional obligation to do so, and unlike those situations in which a separate privacy or liberty interest may be at stake, see, e.g., Cappelli v. Demlow, 935 P.2d 57, 62-63 (Colo. App. 1996) (civil rights action against judge presiding over criminal prosecution challenging involuntary commitment for competency evaluation), we are not called upon to do so here. Not only does the language of subsection 405(6)(a) fail to suggest that its exclusion is contingent upon either the necessity or propriety of the trial court’s evaluation order, but as we have indicated elsewhere, see, e.g., People v. Duncan, 31 P.3d 874, 877-78 (Colo. 2001), for such an absolute bar to prosecution to rest on the ultimate correctness of trial court rulings ostensibly entered for the defendant’s benefit could well redound to the disadvantage of both the defendant and the integrity of judicial proceedings. Especially where the erroneous failure to suspend proceedings and determine the defendant’s competency could result at most in a reversal of conviction but the erroneous suspension of proceedings for a determination of competency would require the dismissal of all charges with prejudice to refile, courts might understandably be loath to risk the latter rather than the former. See id.
*879 ¶ 14 Neither does interpreting the exclusion of subsection 405(6)(a) to mean precisely what it says create an irreconcilable conflict with the purposes of the speedy trial provision as a whole or subject criminal defendants to (even this minimal) delay at will. With regard to related provisions, we have long held, by analogy to United States Supreme Court jurisprudence concerning the effect of a motion for mistrial on the constitutional bar against double jeopardy, see Oregon v. Kennedy, 456 U.S. 667, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982), that requests for a continuance forced in bad faith or other judicial or prosecutorial misconduct will not be attributable, for purposes of the speedy trial statute, to the defendant. See Duncan, 31 P.3d at 877-78 (request for continuance following prosecution’s late disclosure of a letter bearing on the credibility of one of its prospective witnesses chargeable to defendant in absence of bad faith); Hampton v. Dist. Court in & for Jefferson Cty., 199 Colo. 104, 605 P.2d 54, 56-57 (1980) (remand for hearing where the record demonstrated a prima facie case of bad faith by the prosecution in filing four habitual criminal counts immediately prior to beginning trial); People v. Steele, 193 Colo. 87, 563 P.2d 6, 11 (1977) (request for continuance following late endorsement of witness chargeable to defendant in absence of bad faith). Similarly, implicit in the exclusion of subsection 405(6)(a) for any period of observation after the issue of the defendant’s ineompetency has been raised is the requirement that the issue have been raised in good faith. Should a trial court act in other than good faith, ordering a competency evaluation for purposes of delay or to deprive the defendant of some other right to which he would be entitled, exclusion of the time required for such an evaluation would simply not be within the contemplation of the statute.
¶ 15 The defendant does not assert, and the record clearly would not support, such a finding of bad faith in this case. Whether or not the defendant’s conduct was such as to compel suspension of the proceedings and an order for a competency evaluation, as both the trial and appellate courts apparently believed, it clearly provided a good faith basis for raising the question of the defendant’s competency. As the court of appeals indicated, in addition to the trial court’s belief that the defendant was not making a rational choice concerning representation, in the final few weeks before the order at issue here, his aberrant behavior—including such things as his wild accusations of collusion between his counsel and the prosecution, his questioning of his counsel’s integrity regarding ongoing investigation, his claim that he was inspired, his fatalism concerning God’s will, and his vacillation between contradictory stances regarding his desire for representation by counsel—provided ample grounds for any court to at least question his competency.
¶ 16 The defendant does not suggest, as an ulterior motive for purposeful delay, any inability or unwillingness of the prosecution or court to go forward with his trial as scheduled. Quite the contrary, in his briefing to this court, he acknowledges the inherent tension among his rights to counsel and self-representation, his right not to be tried while incompetent, and his right to a speedy trial; and he openly concedes the court’s attempt to balance these rights, merely finding fault with what he considers to be the court’s unwarranted presumption that his election to represent himself rather than cede his speedy trial right indicated a mental defect and its allocation of undue weight to his right to proceed only if competent. Not only is there no suggestion that the court acted in bad faith, but by exercising its discretion as it did, the trial court was able to ensure both that the defendant was not permitted to waive his right to counsel or be tried while incompetent and that he was ultimately permitted his choice to represent himself. While his trial was delayed some two months beyond the date of its original setting, the defendant was nevertheless brought to trial within the statutorily calculated six-month period.
III.
¶ 17 Because section 18-1-405, on its face, mandates exclusion from the defendant’s speedy trial computation of any period during which he was actually being examined for competency, without regard for the necessity or propriety of the court’s order requiring *880 such an examination, the defendant was brought to trial within the statutorily calculated six-month period. In the absence of any specific assertion or indication in the record that the district court’s order was entered in bad faith, for the purpose of circumventing the statutory speedy trial mandate or otherwise depriving the defendant of a protected interest rather than from any concern for the defendant’s rights or the integrity of the judicial process, the judgment of the court of appeals is affirmed.
JUSTICE MÁRQUEZ dissents.