The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader.  The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
October 2, 2025

## 2025COA79

**No. 22CA1402, *People v. Conlon* — Criminal Law — Rights of Defendant — Speedy Trial**

A division of the court of appeals holds, as a matter of first

impression, that a court errs by finding that a defendant waived his

statutory speedy trial right when the court took months to rule on a

discovery issue and, as a result of the court's delay in ruling,

defense counsel faced the prospect of receiving a massive volume of

discovery materials only days before trial.  But the error is harmless

if the court resets the trial for a date before the speedy trial deadline

in effect when the court ruled on the discovery issue and, therefore,

the court's error does not violate the defendant's statutory right to a

speedy trial.

Court of Appeals No. 22CA1402
Arapahoe County District Court No. 19CR875
Honorable Joseph Whitfield, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Brandon John Conlon,

Defendant-Appellant.

JUDGMENT AFFIRMED

Division VII
Opinion by JUDGE LIPINSKY
Pawar and Lum, JJ., concur

Announced October 2, 2025

Philip J. Weiser, Attorney General, Lisa K. Michaels, Senior Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Taylor J. Hoy, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1    Persons accused of a crime are entitled to a speedy trial. Under the Colorado speedy trial statute, that means a trial "within six months from the date of the entry of a plea of not guilty." § 18-1-405(1), C.R.S. 2025.  As a general rule, if the defendant's case is not brought to trial within the six-month period, "the pending charges shall be dismissed" with prejudice.  *Id.*  As relevant to this appeal, if the defendant seeks and is granted a continuance of the trial date, "the period within which the trial shall be had is extended for an additional six-month period from the date upon which the continuance was granted." § 18-1-405(3).  Determining whether a defendant waived speedy trial and whether a court violated a defendant's statutory speedy trial right can be a difficult, fact-intensive endeavor.

¶ 2    In this case, we consider two distinct issues involving interpretation of the Colorado speedy trial statute.  First, we hold that a court errs by finding that the defendant waived his statutory speedy trial right when the court took months to decide a discovery motion and, as a result of the court's delay in ruling, defense counsel faced the prospect of receiving a massive volume of discovery materials only days before trial.  But we also conclude

1

that the error is harmless if the court resets the trial for a date before the speedy trial deadline in effect at the time of the court's ruling and, therefore, the court's error does not violate the defendant's statutory right to a speedy trial.

¶ 3 Second, applying *People v. Duncan*, 31 P.3d 874, 876 (Colo. 2001), we hold that a court does not err by finding a waiver of speedy trial when defense counsel advises the court that counsel is not prepared to proceed to trial on the scheduled date because the defense never received voluminous discovery materials and the prosecution's failure to provide such materials was the result of lack of diligence and not bad faith.

¶ 4 Because we conclude that the court did not violate the statutory speedy trial right of defendant, Brandon John Conlon, and because we reject his other arguments, we affirm.

## I. Background

¶ 5 A reasonable jury could have found the following facts based on the evidence introduced at trial.

¶ 6 In March 2019, H.C., the victim, reported that Conlon, her then husband, had physically assaulted her four days earlier.

Conlon had a history of physically, verbally, and emotionally abusing the victim for more than a decade.

¶ 7 During the incident that the victim later reported to the police, she awoke when Conlon struck her with a wooden bat. While hitting her, Conlon called her "stupid" and "worthless," said she "didn't do anything right," and told her "it was all [her] fault." She testified that she did not call the police at the time because she was "scared for [her] life." Conlon also attacked the victim the next day, again while she was sleeping. He punched her repeatedly in the face and again called her "stupid" and "worthless." That attack blinded the victim in one eye.

¶ 8 During the course of law enforcement's investigation into the assaults, the victim consented that the prosecution could collect from her phone the abusive messages that Conlon had sent her over several years.

¶ 9 The prosecution charged Conlon with two counts of second degree assault and one count each of third degree assault, stalking, and violation of a protection order. The defense requested that the jury be instructed on additional counts for lesser nonincluded

offenses: one count of reckless endangerment and three counts of harassment. A jury convicted Conlon on all counts.

¶ 10     On appeal, Conlon contends that (1) the court violated his statutory speedy trial right; (2) section 18-3-602(1)(c), C.R.S. 2025, the subsection of the stalking statute for which he was convicted, is facially overbroad; and (3) there was insufficient evidence to support his conviction for violating a protection order. We affirm.

## II.     Speedy Trial

¶ 11     Conlon first contends that the court violated his statutory speedy trial right. We disagree.

### A.     Additional Background

#### 1.     The Proceedings Through
the September 28, 2021, Trial Readiness Conference

¶ 12     The prosecution filed the charges against Conlon in March 2019. Conlon pleaded not guilty, and the court scheduled his trial for January 27, 2020. Conlon's initial speedy trial deadline was April 17, 2020. Several continuances not pertinent to this appeal delayed the trial.

¶ 13     On December 9, 2020, the prosecutor filed a motion for an in camera review of the victim's cell phone records (the discovery

4

motion).  The prosecutor explained in the discovery motion that law enforcement officers had, with the victim's consent, extracted a complete digital copy of the contents of her phone.  She later revoked her consent to the extraction of any records other than the text messages between her and Conlon, however.

¶ 14     The prosecutor asked law enforcement officers to provide defense counsel with those text messages but not any other records extracted from the victim's phone.  In the discovery motion, the prosecutor asked the court to review the other records and determine which of them, if any, needed to be produced to the defense.

¶ 15     The prosecutor provided the court with the complete copy of the contents of the victim's phone for this purpose and, at a hearing conducted on April 12, 2021, told the court that no other copies of the phone records existed.

¶ 16     The court eventually reset the trial for October 11, 2021, with a new speedy trial deadline of December 1, 2021.  The court scheduled a trial readiness conference for September 28, 2021.  The new deadline for the defense's endorsement of witnesses was September 6, 2021.  Defense counsel did not object to these dates.

¶ 17     At a status conference conducted on August 20, 2021, defense counsel reminded the court that it had not yet ruled on the discovery motion and asked the court to decide it "sufficiently in advance of trial and the [witness] endorsement deadline." The court said that its ruling on the discovery motion was "forthcoming."

¶ 18     The court did not rule on the discovery motion until 5:49 p.m. on September 27, 2021 — only hours before the trial readiness conference scheduled for the next morning. In its ruling, the court ordered the prosecution to produce to the defense nearly 31,000 records from the victim's cell phone. The court explained that those records could be relevant to the stalking charge. At the time of the ruling, Conlon's trial was only nine business days away.

¶ 19     At the trial readiness conference, the court asked defense counsel whether he was ready to proceed to trial. Defense counsel noted that he had yet to receive the 31,000 phone records and did not know when the prosecutor would produce them, how much time it would take to review them, or whether the defense would need to endorse additional witnesses once defense counsel had reviewed the records. He said, "[W]e cannot proceed until we have

had a chance to review [the records]." Conlon's counsel also told the court,

> Given of course that this delay is not related to Mr. Conlon or anything of his doing, *we would request that any continuance be within the currently set speedy trial* and to allow enough time, at least to be 35 days from now, so that way if there are additional witness endorsements . . . from the cellular phone records that we would be able to sufficiently endorse them ahead of trial.

(Emphasis added.)

¶ 20    The court found that, through this statement, Conlon was waiving speedy trial. Nonetheless, the court reset the trial for November 29, 2021, before the prior December 1 speedy trial deadline.

### 2.    The November 23, 2021, Trial Readiness Conference

¶ 21    As the November 29 trial date drew closer, Conlon's defense counsel still had not received the 31,000 additional phone records. For this reason, on November 21, defense counsel moved for sanctions in the form of dismissal of the stalking and violation of a protection order counts (the sanctions motion). Defense counsel argued in the sanctions motion that dismissal of the two counts was warranted because of the prosecution's bad faith in failing to

7

produce the additional phone records, as the court had ordered. Quoting *Pfantz v. Kmart Corp.*, 85 P.3d 564 (Colo. App. 2003), and citing other civil cases, defense counsel asserted that bad faith in the discovery context means "culpable conduct which is more than mere inadvertence or simple negligence, but is gross negligence" or "conduct which, although not necessarily deliberate or intentional, nonetheless amounts to a flagrant disregard or dereliction of one's discovery obligations." *Id.* at 568 (quoting *Kwik Way Stores, Inc. v. Caldwell*, 745 P.2d 672, 677 (Colo. 1987)). Defense counsel said that the prosecution had acted in bad faith by "neglecting its [Crim. P.] 16 obligations" to Conlon despite "a direct [c]ourt order mandating compliance." Defense counsel later explained that he requested dismissal of the stalking and violation of a protection order counts because they "have very expansive date ranges" and the phone records may relate to them.

¶ 22    The prosecutor responded that, because the court possessed the only digital copy of the phone records, the court — not the prosecution — needed to provide the additional records to the defense.

¶ 23    At the November 23 trial readiness conference, defense counsel informed the court that he had still not received the phone records, notwithstanding the court's order that the prosecutor produce them. Unlike the situation at the September conference, this time the delay was attributable to the prosecution's failure to produce the phone records and not to the time it took the court to rule on the discovery motion.

¶ 24    The prosecutor said she had only learned that morning that the sheriff's department had a download of the victim's phone in its possession. She told the court, "I understood and it was my belief that the copy of the phone that has been provided to the Court was the only download of the phone."

¶ 25    Defense counsel responded that the prosecutor had failed to provide "any affirmative steps by the district attorney's office to comply with both their discovery obligations . . . and this Court's direct written order to the prosecution to provide this information." Consequently, defense counsel argued that the prosecution had acted in bad faith, which he defined, consistent with his argument in the sanctions motion, as "conduct which although not

9

necessarily deliberate or intentional, nonetheless amounts to a flagrant disregard [or] dereliction of one's discovery obligations."

¶ 26 In announcing its decision to deny the sanctions motion, the court said the prosecutor "should be well aware that law enforcement still has possession" of the phone records absent information that law enforcement was not retaining them. The court noted that it had not heard of "a process" whereby law enforcement did not retain a copy of discovery materials that "they themselves replicated" for the court's review. Further, the court said that its September 27 order was clear, "but perhaps at least to one side it was not."

¶ 27 The court admonished the prosecutor:

> [W]hen an order is issued, it's prudent, particularly upon the party bringing the case, to follow up, and in large part again because the defense at least as this Court understands has never had these records, and even if the People assert they do not, the People by their own acknowledgment assert that their office has handled them for chain of custody purposes, even if it's just to provide them to law enforcement. The Court is well aware of what Rule 16 says about the connections of records in discovery and what the obligations of the People are as it relates to law enforcement. At the same time, if there is a misunderstanding of an order, it should not

10

persist for two months.  So don't let this
happen again.  Am I clear?

¶ 28 But the court did not find that the prosecutor had acted in bad faith; it did not find that her failure to produce the additional records to the defense was "gross negligence" or amounted to a "flagrant disregard or dereliction" of her discovery obligations. *Pfantz*, 85 P.3d at 568.

¶ 29 The discussion at the November conference then turned to whether the case would proceed to trial as scheduled on November 29.

¶ 30 Defense counsel reminded the court and the prosecutor that, at the September conference, he had "told everyone" that he would not be ready for trial until he had received the additional phone records.  He said that he could only proceed to trial on November 29 if the court dismissed the stalking and violation of a protection order counts, to which the phone records were potentially relevant. In addition, defense counsel asserted that he was not asking for a continuance because Conlon did not want one and "speedy is soon."

¶ 31 Although defense counsel told the court he was not seeking a continuance, he also said that, if the court did not dismiss the

stalking and protection order counts, the defense would not be ready to try the case on November 29. Defense counsel conveyed the clear message that he could not effectively represent Conlon at a November 29 trial on all counts.

¶ 32   The court denied the sanctions motion and reset the trial for January 10, 2022. In doing so, the court reaffirmed, over the defense's objections, its prior finding that Conlon had waived speedy trial. On December 5, 2021, Conlon moved for dismissal of all charges under section 18-1-405(5) based on the court's alleged violation of his statutory right to a speedy trial.

¶ 33   Conlon's case eventually went to trial in April 2022. (The appellate record does not indicate when, if ever, defense counsel received the phone records.)

### B.   Applicable Law

¶ 34   If a defendant's case is not tried within six months of the entry of a not guilty plea, the charges must be dismissed unless the statute provides otherwise. § 18-1-405(1). "The burden of compliance with the speedy trial requirement . . . rests wholly with the [prosecution] and the trial court." *People v. Sherwood*, 2021 CO 61, ¶ 23, 489 P.3d 1233, 1239.

12

¶ 35 The speedy trial statute "makes specific provision for the effect of a request for a continuance on the speedy trial calculation." *Duncan*, 31 P.3d at 876. As noted above, section 18-1-405(3) says that, "[i]f a trial date has been fixed by the court, and thereafter the defendant requests and is granted a continuance for trial, the period within which the trial shall be had is extended for an additional six-month period from the date upon which the continuance was granted."

¶ 36 "[T]he key to interpreting subsection 405(3) is not whether the defendant caused the delay, but whether a continuance was granted at the defendant's request." *Duncan*, 31 P.3d at 876-77 (citation omitted). But the supreme court also said that, despite the seemingly inflexible language of section 18-1-405(3), not every defense request for a continuance extends the six-month speedy trial period. A defendant does not waive speedy trial by requesting a continuance in response to the prosecution's bad faith, last-minute production of voluminous discovery materials to the defense. *See id.*

¶ 37 "In addition to the exceptions and exclusions that are specifically addressed by the speedy trial statute, there may be

circumstances where a reasonable delay is necessary to protect other fundamental constitutional rights of the defendant." *People ex rel. Gallagher v. Dist. Ct.*, 933 P.2d 583, 588 (Colo. 1997). "In such an instance, the statutory speedy trial right must yield to protection of a defendant's constitutional rights." *Id.* (Conlon does not contend that his constitutional right to a speedy trial was violated.)

¶ 38    Whether a court violated a defendant's speedy trial rights by setting a new trial date is a question of law that we review de novo. *Sherwood*, ¶ 19, 489 P.3d at 1238.

### C.    Analysis

¶ 39    Conlon asserts that the court erred by finding that he waived his statutory speedy trial right at the September trial readiness conference. Conlon also raises the separate — albeit related — contention that the court erred by reaffirming its waiver finding at the November conference and by setting a new trial date past the prior December 1 speedy trial deadline because the continuance of the November 29 trial date was attributable to "the prosecution's failure to disclose the required evidence."

14

¶ 40    In his opening brief, Conlon conflates the events that occurred at the September and November conferences, even though the procedural posture of the case materially changed between the two conferences.  For this reason, we first address whether the court erred by finding at the September conference that Conlon waived his statutory speedy trial right by seeking additional time to prepare for trial as a consequence of the court's delay in ruling on the discovery motion.  Second, we separately consider whether, at the November conference, the court erred by reaffirming its prior waiver finding and setting the trial for a date following the previous December 1 speedy trial deadline, when the need to postpone the trial was solely attributable to the prosecution's failure to timely produce the 31,000 phone records to the defense, as the court had ordered.

1.    The September Trial Readiness Conference

¶ 41    Conlon asserts that the court erred for two reasons by finding at the September conference that he waived his statutory speedy trial right: first, at the conference, defense counsel requested a new trial date that fell *within* the existing speedy trial deadline; and second, Conlon's request for a continuance was not attributable to

him, but instead to the length of time it took the court to decide the discovery motion. Because we agree with Conlon's second argument, we need not address his first argument.

### a. Conlon Did Not Waive His Statutory Speedy Trial Right at the September Conference Because the Court's Delay in Ruling Necessitated the Delay

¶ 42    Our analysis of Conlon's second argument largely rests on the supreme court's holding in *Duncan* that section 18-1-405(3)'s broad language, which says that any defense request for a continuance results in a waiver of speedy trial, is subject to exceptions. 31 P.3d at 877. *Duncan*, coupled with the supreme court's cases addressing continuances resulting from delays solely attributable to the trial court, *People v. Arledge*, 938 P.2d 160 (Colo. 1997), and *People ex rel. Gallagher*, 933 P.2d 583, compels the conclusion that a court errs by finding a waiver of speedy trial when the defense had no choice but to seek a continuance as a consequence of the court's delay in ruling on a discovery issue only days before trial.

¶ 43    In *Arledge* and *Gallagher*, the supreme court considered whether a court's actions that force a postponement of the trial date can be charged to the defendant. In neither case did the defense expressly ask for a continuance; the need for a later trial date was

16

apparent even without such a request. As we explain below, in both cases, the supreme court concluded that the defendant had not waived his statutory speedy trial right because the court alone was responsible for the continuance of the trial date.

¶ 44 In *Arledge*, the defendant filed a timely recusal motion five weeks before trial. 938 P.2d at 162-63. The trial judge initially denied the motion but then, only three days before trial, announced that he had decided to recuse himself and that he would ask the chief judge to reassign the case to a different judge. *Id.* at 163-64. Even though the defendant had not requested a continuance, the judge announced that the defendant had waived speedy trial by moving for recusal. *Id.*

¶ 45 The new judge assigned to the case reset the trial for a date after the prior speedy trial deadline over the defense's objections. *Id.* at 164. Defense counsel then moved to dismiss the case, arguing that, by setting the trial outside the prior six-month speedy trial period, the new judge had violated the defendant's statutory speedy trial right. *Id.* The new judge agreed and dismissed the charge against the defendant. *Id.*

¶ 46    The supreme court held that the trial court's delay in ruling on the defense's recusal motion was not chargeable to the defendant and that, under the circumstances, the trial court had violated the defendant's speedy trial right by resetting the trial outside the six-month statutory period. The supreme court affirmed the dismissal of the charge against the defendant. *Id.* at 165.

¶ 47    The supreme court said that, "[u]nder circumstances where no statutory exception or constitutional right justifies a delay, and the defendant has taken no action to effectuate or consent to a delay, noncompliance with the speedy trial requirements results in dismissal of the charges against the defendant." *Id.* The supreme court noted that a trial court can violate a defendant's right to a speedy trial by charging the defendant with a continuance of the trial attributable the court's own "dilatory ruling." *Id.*; *see also Hills v. Westminster Mun. Ct.*, 245 P.3d 947, 950 (Colo. 2011) (holding that a municipal court's dilatory ruling may result in a violation of the defendant's speedy trial rights). (By citing supreme court decisions referring to dilatory rulings, we do not mean to suggest that, in this case, the court acted in bad faith, with gross negligence, or in "flagrant disregard or dereliction" of its obligation

18

to decide matters without "inordinate delay," *see In re Jones*, 728 P.2d 311, 314 (Colo. 1986), or that the court inordinately delayed in ruling on the discovery motion. The record does not reveal why the court took nine months to rule on the discovery motion.)

¶ 48 In *Gallagher*, the supreme court similarly held that the trial court's actions forced the continuance of the trial and, therefore, the defendant did not waive speedy trial. In that case, the defendant's public defender announced one month before trial that the Office of the Public Defender "would no longer be able to represent [the defendant] due to an irreconcilable conflict of interest." *Gallagher*, 933 P.2d at 586. Two days later, the court asked attorney Paul Origlio to accept appointment as Gallagher's new counsel. *Id.* But "Origlio informed the district court that he could not accept the previously set trial date . . . and that he would be unable to schedule a new trial within the speedy trial date." *Id.* Further, Origlio advised the court that the defendant was "unlikely to waive his speedy trial rights" and "both Origlio and the People suggested that an attempt should be made to find other representation more able to meet the speedy trial deadline." *Id.*

¶ 49     The court nonetheless appointed Origlio as defense counsel based on its assumption that "any new counsel would not have adequate time to prepare which would engender a claim of inadequate representation" and set the trial for a date thirty-eight days beyond the speedy trial deadline. *Id.* The court said, "I don't think the court is required to go to extraordinary measures to find some attorney that will accept a trial date within a date which this court finds is probably not reasonable under the circumstances." *Id.*

¶ 50     In its order appointing Origlio and setting the new trial date, the court found that the defendant was responsible for the delay in his trial and observed that, "where newly appointed conflict-free counsel cannot accept a trial date prior to the expiration of the six month speedy trial period, such inability is tantamount to a request for a continuance." *Id.* at 587.

¶ 51     The supreme court concluded that the trial court erred because the delay in the trial was not properly chargeable to the defendant. *Id.* at 592. It premised its decision on several material facts, including the lack of record support for the trial court's assertions that

1. "the amount of time left" before the speedy trial deadline was "insufficient . . . to prepare for this trial";

2. "find[ing] alternative defense counsel who could have tried the case prior to the speedy trial date" would be "impossible" and "unreasonable"; and

3. the defendant's "right to effective assistance of counsel would have been jeopardized by the court's attempt to seek other defense counsel."

*Id.* at 590. The supreme court held that the trial court erred by refusing to find another defense attorney who was available for a trial before the speedy trial deadline. *Id.*

¶ 52    The supreme court concluded that the delay in the trial was not necessary "to safeguard the defendant's right to effective assistance of counsel." *Id.* The court noted, "[T]here [was] absolutely no evidence in the record that [the defendant] agreed to the delay," and, more importantly, there was no record evidence that the defendant "took any action that necessitated" the delay. *Id.* at 591-92. Although the supreme court said that a defendant's statutory speedy trial right may, when necessary, yield to protect the defendant's constitutional right to effective assistance of

counsel, *id.* at 588-89, the court found no such clash of rights in *Gallagher*. Rather, *Gallagher* teaches that, when considering whether a defendant waived speedy trial, the court must consider to whom the delay forcing the continuance is attributable and whether it resulted from an action the court took outside the defendant's control. *See id.* at 589-90.

¶ 53　After the supreme court decided *Arledge* and *Gallagher*, it considered when, under section 18-1-405(3), a defendant's request for a continuance due to a prosecutor's tardy production of discovery materials may be "charged to someone other than the defendant." *Duncan*, 31 P.3d at 878. In *Duncan*, the prosecutor did not disclose discoverable material to the defense until the Friday before trial, which was scheduled to begin on Monday. *Id.* at 875. Although the trial court agreed with the defense that the untimely disclosed information was discoverable, it declined to find a speedy trial violation because the prosecutor had not learned of the information until one day before the production and had not acted in bad faith. *Id.* Unlike in *Arledge* and *Gallagher*, defense counsel in *Duncan* expressly requested a continuance.

¶ 54    The *Duncan* court held that a defendant who requests a

continuance after receiving voluminous discovery materials from

the prosecution only days before trial necessarily waives speedy

trial, absent a finding that the prosecution delayed the production

in bad faith. *Id.* at 878. Notably, the supreme court held that,

although section 18-1-405(3) "does not expressly include any

qualification on the effect of a defense requested continuance," an

exception to the statute's sweeping language was necessary in bad

faith cases. *Id.* at 877. The court reasoned that, "without

protection from such bad faith or deliberate prosecutorial

misconduct, a defendant's often difficult tactical choice to seek a

continuance would become no choice at all." *Id.*

¶ 55    Central to the supreme court's reasoning in *Duncan* was its

observation that, "[t]o the extent that [a defendant] is disadvantaged

by erroneous rulings of the court or violations of the law or

procedural requirements by the prosecuting attorney, appropriate

remedies are separately provided for those irregularities." *Id.* The

*Duncan* court cited one such remedy, which is found in Crim. P.

16(III)(g):

> [i]f at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule or with an order issued pursuant to this rule, the court may order such party to permit the discovery or inspection of materials not previously disclosed, grant a continuance, prohibit the party from introducing in evidence the material not disclosed or enter such other order as it deems just under the circumstances.

¶ 56 However, the court cited no remedy, and we are aware of none, for a trial court's actions that result in a substantial delay in defense counsel's receipt of potentially relevant evidence only days before trial. In that situation, the defense has no recourse other than to seek a continuance. For example, the court cannot penalize the prosecution for the court's own delay in ruling on a critical pretrial motion. And the lack of any protection from the consequences of the court's delay — other than a continuance — means that the defense has no choice under the circumstances but to seek a new trial date.

¶ 57 Because *Duncan* involved delays in the proceedings caused by the prosecution, the court's pronouncements in that case are not controlling when, as here, the delay requiring the continuance is solely attributable to the court. For example, in the context of a

24

delay caused by the prosecution's good faith actions, the *Duncan* court said the key consideration under section 18-1-405(3) is not whether the defendant caused the delay, but whether one was granted at his request. 31 P.3d at 876-77.

¶ 58      Although the defense did not expressly ask for a continuance in *Arledge*, 938 P.2d at 165, or *Gallagher*, 933 P.2d at 589-90, the reasoning of those cases applies even if the defense made such a request. Therefore, even if the defense had asked for a continuance in those cases, following the supreme court's logic, the delay attributable to the court's actions could nonetheless not be charged against the defendant. Those cases are consistent with the principle that, like the prosecution, the court is responsible for complying with the defendant's statutory speedy trial right. *See Sherwood*, ¶ 23, 489 P.3d at 1239; *see also Hills v. Westminster Mun. Ct.*, 215 P.3d 1221, 1225 (Colo. App. 2009) ("[C]ontinuances because of docket congestion are generally not attributable to a defendant and do not relieve the prosecution and the court of their responsibility to bring a defendant to trial in a timely manner."), *aff'd*, 245 P.3d 947 (Colo. 2011).

¶ 59    Accordingly, *Duncan*, *Arledge*, and *Gallagher*, when read together, compel the conclusion that section 18-1-405(3) does not require a finding that the defendant waived speedy trial when the defense seeks a continuance because the court's delay in ruling on a discovery issue resulted in the defense's receipt of voluminous discovery materials only days before trial.  Under those circumstances, the defendant has no remedy but to seek a continuance, just as when a prosecutor's bad faith action forces the defense to ask for a postponement of the trial.  *See Duncan*, 31 P.3d at 877.  In both scenarios, the defendant's tactical choice to seek a continuance "become[s] no choice at all" because the court's last-minute discovery ruling leaves the defendant with no other option. *Id.*

¶ 60    In this case, the court's delayed ruling on the discovery motion put defense counsel in an untenable position.  Conlon was not responsible for the court's 169-day delay in deciding which additional phone records needed to be produced to defense counsel.  The court ruled on the discovery motion only nine business days before the October 11 trial date.  Even if the prosecution had produced all 31,000 additional phone records the day of the

26

September conference, the timing of the court's ruling on the discovery motion meant that defense counsel lacked sufficient time to review the records before trial.

¶ 61    Accordingly, we hold that the court erred by finding that Conlon waived his statutory right to a speedy trial because Conlon had no choice but to request a continuance in light of the court's nine-month delay in ruling on the discovery motion.

b.    The Court's Error in Finding a Waiver Was Harmless

¶ 62    Although the court erred, we conclude that the error did not violate Conlon's statutory right to a speedy trial. Although the court found a waiver of speedy trial, it nevertheless reset Conlon's trial for a date before the prior December 1 speedy trial deadline. If not for the subsequent delays attributable to the prosecutor, as discussed in Part II.A.2 above, the case would have proceeded to trial before December 1 and there would have been no need to find a waiver. *See* § 18-1-405(1) ("[I]f a defendant *is not brought to trial* on the issues raised by the complaint, information, or indictment within six months from the date of the entry of a plea of not guilty . . . the pending charges shall be dismissed . . . ." (emphasis added)); *Clark v. People*, 2024 CO 55, ¶ 61, 553 P.3d 215, 229

27

(Under the harmless error standard, "reversal is required only if the error affects the substantial rights of the parties." (citation omitted)).

¶ 63    Thus, while a court errs by causing a substantial delay in defense counsel's receipt of potentially relevant evidence and then by charging the necessary continuance against him, the error is harmless when, as here, the court sets the new trial date before the prior speedy trial deadline.

### 2.    The November Conference

#### a.    Conlon Effectively Requested a Continuance

¶ 64    The status of the case at the November conference was materially different from the status of the case at the September conference.  The case could not proceed to trial on November 29 because of the prosecution's lack of diligence in producing the 31,000 additional phone records and not due to the trial court's delay in ruling on the defense's entitlement to those records.

¶ 65    By representing that he would be unprepared at a November 29 trial on all counts, Conlon's counsel communicated to the court that Conlon had no choice but to seek a new trial date as a consequence of the prosecution's failure to timely produce the

additional phone records. Counsel's statement that, "[i]f the [c]ourt were to grant" the sanctions motion, counsel could "affirmatively state that we are ready and prepared to proceed to trial" was the logical equivalent of saying that, if the court denied the sanctions motion, defense counsel would not be prepared to go to trial on November 29. Although defense counsel also said that Conlon was not asking for a continuance, the message was clear: If the court preserved the November 29 trial date, Conlon would be forced to proceed to trial with unprepared counsel.

¶ 66     In light of defense counsel's statements, the court could not move forward with the November 29 trial date. No responsible court would knowingly force a defendant to go to trial without the effective assistance of counsel. An unprepared lawyer is an ineffective one. *See People v. Scales*, 763 P.2d 1045, 1048 (Colo. 1988) ("Denial of adequate time to prepare for trial would have provided [the defendant] with a claim for ineffective assistance of counsel . . . ."); *People v. White*, 514 P.2d 69, 71 (Colo. 1973) ("Without knowledgeable trial preparation, defense counsel cannot reliably exercise legal judgment and, therefore, cannot render reasonably effective assistance to his client.").

¶ 67    For these reasons, we hold that, under the circumstances, defense counsel effectively requested a continuance of the trial. *See Scales*, 763 P.2d at 1047-48 (noting that a continuance may be chargeable to the defendant if caused by some "affirmative action evincing consent by the defendant"); *accord State v. Dale*, 360 N.W.2d 687, 690 (S.D. 1985) (holding that the defendant's objection that he could not prepare his defense by the proposed trial dates was, in effect, a request for a continuance); *cf. People v. Wilson*, 972 P.2d 701, 705 (Colo. App. 1998) (explaining that defense counsel's motion to dismiss for violation of speedy trial was the equivalent of a motion for a continuance when defense counsel said that, due to scheduling problems, no attorneys in his office were available on the trial date); *People v. Chavez*, 650 P.2d 1310, 1310-11 (Colo. App. 1982) (holding that a continuance premised on defense counsel's unavailability for trial before the speedy trial deadline was chargeable to the defendant). *But see People v. Bell*, 669 P.2d 1381, 1384 (Colo. 1983) ("The key to interpreting [section 18-1-405(6)(f)] is to determine whether the defendant caused the delay. If the delay is caused by, agreed to, or created at the instance of the defendant,

it will be excluded from the speedy-trial calculation made by the court.").

¶ 68     Thus, we must analyze whether defense counsel's effective request for a continuance at the November conference was chargeable to Conlon even though the delay was solely due to the prosecution's failure to timely produce the additional phone records.

### b.     Under *Duncan*, the Continuance of the November 29 Trial Date Was Chargeable to Conlon

¶ 69     We turn to *Duncan* to determine whether defense counsel's effective request for a continuance at the November conference resulted in a waiver of Conlon's statutory speedy trial right.

¶ 70     The supreme court held in *Duncan*, "In the absence of any bad faith attributable to the prosecution's late disclosure of [discovery], the legal consequence of defense counsel's request for a continuance" was to "extend the period within which trial could be commenced for an additional six months from the date of the continuance."  31 P.3d at 878.  A "finding concerning the prosecution's motivation and intent is a finding of fact" to which an appellate court must defer so long as it is "not tainted by legal error

31

or otherwise clearly erroneous." *People v. August*, 2016 COA 63, ¶ 23, 375 P.3d 140, 145. "The trial court's finding whether the prosecution has acted in bad faith will be upheld if supported by the record." *People v. McMurtry*, 101 P.3d 1098, 1101 (Colo. App. 2003), *aff'd on other grounds*, 122 P.3d 237 (Colo. 2005).

¶ 71 Despite the court's clear frustration with the prosecution's failure to comply with its September 27 discovery order, the court did not find that the failure resulted from bad faith, "gross negligence," or a "flagrant disregard or dereliction" of the prosecution's discovery obligations. The court charitably suggested that, although its order was clear to the court, it was perhaps not clear to the prosecution.

¶ 72 Nothing in the court file contradicts the prosecutor's assertion that she did not know before the November conference that law enforcement had possessed a copy of the additional phone records all along. Although the prosecutor may have been ignorant of basic law enforcement procedures, the record shows that the prosecutor told the court, more than six months before the November conference, that she had provided the court with the only complete copy of the contents of the victim's phone. She reiterated that

32

erroneous statement in her response to the sanctions motion. The

prosecutor's representations throughout the litigation support the

court's reaction upon learning that defense counsel had never

received the additional phone records — expressing frustration with

the prosecutor but not finding bad faith or its equivalent.

¶ 73    In the absence of a finding of prosecutorial bad faith, under

*Duncan*, we are compelled to hold that defense counsel's effective

request for a continuance at the November conference was

chargeable to Conlon.

¶ 74    When it reset the trial at the November readiness conference,

the court in effect reaffirmed its finding at the September

conference that Conlon had waived speedy trial. Although, as

explained in Part II.C.1.a above, the court erred by making that

finding at the September conference, the timing of that finding, and

the court's reiteration of it at the November conference, is of no

consequence. Even if the court had not previously found that

Conlon waived the prior December 1 speedy trial deadline, at the

November conference, the court was required to make such a

finding under *Duncan* because defense counsel requested a

continuance by saying he could not proceed to trial on November 29

unless the court granted the sanctions motion and the court denied that motion.

¶ 75     We acknowledge that the reasoning of *Duncan* forces defense attorneys to choose between two of their clients' rights — the right to effective assistance of counsel and the statutory right to a speedy trial — when the defense receives a massive volume of discovery materials only days before trial as a consequence of the prosecutor's lack of diligence.  Conlon and his counsel bore no responsibility for this situation.

¶ 76     But in *Duncan,* the supreme court decided that the degree of the prosecutor's misfeasance or malfeasance was the *only factor* a court may consider in determining whether a defendant who did not receive voluminous discovery materials until the eleventh hour as a consequence of the prosecutor's actions or inaction waived speedy trial.  In this case, regardless of whether the prosecutor acted in bad faith in not producing the additional phone records, the impact on the defendant would have been the same: Defense counsel was forced to choose between proceeding to trial without adequate preparation and waiving Conlon's speedy trial right.  Because the statutory speedy trial right must only yield to the defendant's other

34

fundamental constitutional rights when "*necessary* to protect [the defendant's] constitutional right to effective assistance of counsel," *Gallagher*, 933 P.2d at 589, it is difficult to fathom why the defendant's speedy trial right must be sacrificed when the prosecutor delayed the production of the discovery materials in bad faith but not when the delay is attributable to the prosecutor's lack of diligence and ignorance of the discovery rules. Yet as an intermediate appellate court, we are bound to follow the supreme court's decisions. *See People v. Allen*, 111 P.3d 518, 520 (Colo. App. 2004).

¶ 77    Moreover, we recognize that *Arledge, Gallagher*, and *Duncan*, read together, hold trial courts to a higher standard than prosecutors when a court's delay in taking an action forces a continuance of the trial date. As we explain above, a continuance resulting from a trial court's last-minute action that hamstrings the defense's ability to prepare for trial adequately is not charged against the defendant under section 18-1-405, regardless of whether the court acted in bad faith. But under *Duncan*, a prosecutor's delay that forces a continuance results in a waiver of

the defendant's statutory speedy trial rights unless the trial court finds the prosecutor acted in bad faith.

¶ 78    Thus, under *Duncan,* the absence of a finding that the prosecutor acted in bad faith means that Conlon is deemed to have waived speedy trial even though his counsel had no choice but to implicitly request a new trial date so the defense would have sufficient time to review the 31,000 phone records that had yet to be produced to the defense. *See* 31 P.3d at 877.

¶ 79    We appreciate the untenable position in which the court and the prosecution placed defense counsel under *Duncan.* The defense was forced to choose between going to trial without a meaningful opportunity to review 31,000 potentially relevant phone records and to determine whether, based on those records, the defense needed to call additional witnesses — which could later lead to a Crim. P. 35(c) motion premised on trial counsel's ineffectiveness — and asking for a continuance that, under *Duncan,* necessarily resulted in a waiver of Conlon's statutory right to a speedy trial. *Duncan* acknowledged such dilemmas but brushed them aside as inevitable. *See* 31 P.3d at 877 ("A good many factors may influence a defendant to make the tactical choice to request a continuance,

including not only some for which he cannot be held responsible but also many over which he has absolutely no control.").

¶ 80    In sum, we hold that the court did not violate Conlon's statutory speedy trial right.

### III.    Constitutional Challenge to Section 18-3-602(1)(c) of the Stalking Statute

¶ 81    Conlon was charged with and convicted of stalking under section 18-3-602(1)(c) based, in large part, on two exhibits containing nearly 200 pages of abusive messages that Conlon sent the victim over a one-year period.

¶ 82    Section 18-3-602(1)(c) provides, as relevant here, that a person commits stalking if he knowingly "[r]epeatedly follows, approaches, contacts, places under surveillance, or makes any form of communication with another person . . . in a manner that would cause a reasonable person to suffer serious emotional distress and does cause that person . . . to suffer serious emotional distress."

¶ 83    Conlon contends that section 18-3-602(1)(c) is facially overbroad.  We are unpersuaded.

## A. Applicable Law and Standard of Review

¶ 84    The United States and Colorado Constitutions respectively provide that "no law 'abridging' or 'impairing' freedom of speech shall be enacted." *People v. Moreno*, 2022 CO 15, ¶ 10, 506 P.3d 849, 853 (first quoting U.S. Const. amend. I; and then quoting Colo. Const. art. II, § 10).  "Still, the right to free speech is not absolute, and the government may create, and courts have upheld, statutes proscribing certain categories of *un*protected speech."  *Id.*  "Even if a statute aims to proscribe only unprotected speech, it may be struck down as facially overbroad if it *substantially* infringes upon constitutionally protected speech."  *Id.* at ¶ 11, 506 P.3d at 853.

¶ 85    "[A] statute is facially overbroad if it sweeps so comprehensively as to substantially include within its proscriptions constitutionally protected speech."  *Id.* at ¶ 14, 506 P.3d at 853 (quoting *Bolles v. People*, 541 P.2d 80, 82 (Colo. 1975)).  Further, a statute is unconstitutional only if its overbreadth is "real and substantial" in relation to its plainly legitimate sweep.  *Id.* at ¶ 16, 506 P.3d at 854 (quoting *People v. Graves*, 2016 CO 15, ¶ 14, 368 P.3d 317, 323); *see also Moody v. NetChoice, LLC*, 603 U.S. 707, 723 (2024) ("The question is whether 'a substantial number of [the

law's] applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep.'" (citation omitted)).

¶ 86    We employ a three-step analysis to determine whether a statute is facially overbroad. *Moreno*, ¶ 17, 506 P.3d at 854. First, we construe the challenged statute to establish its scope. *Id.* Second, we determine whether the statute as construed prohibits "a substantial amount of protected speech." *Id.* Third, if possible, we apply a limiting construction or a partial invalidation to "honor the legislature's choices while preserving the statute's constitutionality." *Id.*

¶ 87    We review questions concerning the constitutionality of a statute de novo. *Id.* at ¶ 9, 506 P.3d at 852.

¶ 88    In *People v. Cross*, the Colorado Supreme Court considered whether the culpable mental state of "knowingly" applies to the element of section 18-3-602(1)(c) requiring that the defendant acted "in a manner that would cause a reasonable person to suffer serious emotional distress and does cause that person . . . to suffer serious emotional distress." 127 P.3d 71, 72 (Colo. 2006) (quoting § 18-9-111(4)(b)(III), C.R.S. 2005, repealed, amended, and relocated, § 18-3-602(1)(c), C.R.S. 2011 (effective Aug. 11, 2010)), *abrogated*

*by, Counterman v. Colorado*, 600 U.S. 66 (2023). The defendant in

*Cross* argued that the "knowingly" mens rea must apply to that

statutory element "to avoid constitutional vagueness and

overbreadth problems." *Id.* at 78. The supreme court disagreed,

concluding that the mental state of "knowingly" did not apply to the

"serious emotional distress" element of section 18-3-602(1)(c) and

that the element must be measured by an objective standard. *Id.*

¶ 89    In response to the defendant's overbreadth argument, the

supreme court reiterated the principle that "a statute is not

unconstitutionally overbroad simply because it could possibly be

applied in some unconstitutional manner." *Id.* at 79. It held that

the defendant failed to show that the statute "sweeps so

comprehensively as to include a substantial amount of

constitutionally protected speech" and that the General Assembly's

purpose in enacting the statute was "to criminalize conduct that

involves a 'severe intrusion upon the victim's personal privacy and

autonomy, with an immediate and long-lasting impact on quality of

life as well as risks to security and safety of the victim . . . even in

the absence of express threats of physical harm.'" *Id.* (quoting

40

§ 18-9-111(4)(a), C.R.S. 2005, repealed, amended, and relocated, § 18-3-601(1)(f), C.R.S. 2011 (effective Aug. 11, 2010)).

¶ 90   In 2023, the United States Supreme Court considered a similar argument concerning the culpable mental state for the "serious emotional distress" element of section 18-3-602(1)(c) that *Cross* had considered seventeen years earlier.  *See Counterman*, 600 U.S. at 69.  The United States Supreme Court held that, when a defendant's true threats form the basis of a prosecution under section 18-3-602(1)(c), the First Amendment requires that the prosecution prove that the defendant had some subjective understanding of the threatening nature of his statements, and that a mental state of recklessness was sufficient.  *Id.* at 69, 72.  The Colorado Supreme Court subsequently concluded that prosecutions under section 18-3-602(1)(c) based exclusively on a defendant's "repeated, unwelcome, and content-neutral conduct," and not on the content of threatening statements, are not subject to "*Counterman*'s recklessness requirement."  *People v. Crawford*, 2025 CO 22, ¶ 22, 568 P.3d 426, 432.  Neither *Counterman* nor *Crawford* addressed whether section 18-3-602(1)(c) is unconstitutionally overbroad on its face.

41

¶ 91    *Counterman* abrogated *Cross*'s holding on the culpable mental

state for the "serious emotional distress" element of section

18-3-602(1)(c), but it did not wholly invalidate *Cross*.  Because

*Counterman* and its progeny did not address whether section

18-3-602(1)(c) is facially overbroad, we conclude that *Cross* remains

good law on that point.  *See People v. Pellegrin*, 2021 COA 118,

¶ 28, 500 P.3d 384, 392 (holding that the division was bound by the

Colorado Supreme Court's conclusion in *Cross* that section

18-3-602(1)(c) is not facially overbroad), *aff'd on other grounds*,

2023 CO 37, 532 P.3d 1224.

B.    Section 18-3-602(1)(c) Is Not Unconstitutionally Overbroad

¶ 92    In our view, *Cross* is fatal to Conlon's constitutional

overbreadth argument.  *Cross* addressed and rejected the identical

constitutional argument that Conlon presents in his appeal, and it

remains good law notwithstanding *Counterman* and the cases that

followed it.  We are bound by the Colorado Supreme Court's

decisions.  *People v. Cox*, 2021 COA 68, ¶ 8, 493 P.3d 914, 916.

¶ 93    In adhering to the supreme court's holding in *Cross*, we are in

good company; at least two other divisions of this court have done

the same.  *See Pellegrin*, ¶ 32, 500 P.3d at 393; *People v. Richardson*, 181 P.3d 340, 344 (Colo. App. 2007).

¶ 94    But even assuming, without deciding, that the supreme court's statements in *Cross* are nonbinding dicta, as Conlon asserts, the reasoning in *Cross* is persuasive, as is that in *Pellegrin* and *Richardson*.  We accordingly apply it here.

¶ 95    Although Conlon provides several examples of potentially unconstitutional applications of the statute, he has not shown that those applications "substantially outweigh its constitutional ones." *Moody*, 603 U.S. at 724; *see Cross*, 127 P.3d at 79.  Because section 18-3-602(1)(c) criminalizes "only acts of a particular nature" that "hav[e] a particular effect," a substantial amount of constitutional speech is excluded from its sweep.  *Richardson*, 181 P.3d at 344.  The statute targets "repeated *conduct*" or "speech [that] is part of a *series* of conduct" that would cause a reasonable person to suffer serious emotional distress.  *Pellegrin*, ¶ 34, 500 P.3d at 393; *cf. Moreno*, ¶ 24, 506 P.3d at 855 (holding that the phrase "intended to harass" in the harassment statute encompasses a substantial amount of protected speech in the

internet era and is susceptible of no limiting construction that would render it constitutional).

¶ 96    In his supplemental brief, Conlon invites us to view this issue as an as-applied challenge, rather than as a facial challenge, to section 18-3-602(1)(c).  Because he did not present that argument to the trial court or develop it in his opening brief, we decline to address it.  *See People v. Stone*, 2020 COA 23, ¶ 49, 471 P.3d 1148, 1157 ("We do not consider as-applied challenges that are not presented to the trial court because 'it is imperative that the trial court make some factual record that indicates what causes the statute to be unconstitutional as applied.'" (citation omitted)); *People v. Dominguez*, 2024 COA 32, ¶ 11, 551 P.3d 1205, 1208 (declining to address an issue raised for the first time in a reply brief) (*cert. granted* Dec. 23, 2024).

IV.    Sufficiency of the Evidence

¶ 97    Conlon next contends that sufficient evidence did not support his conviction for violating a mandatory protection order.  He specifically argues that the prosecution failed to prove that he violated a protection order between March 27, 2019, and August 25, 2019, as charged, because it never introduced into evidence the

order he allegedly violated. He notes that the prosecution instead introduced into evidence a different order — one dated November 10, 2020. We are unpersuaded.

## A. Additional Background

¶ 98 The victim testified at trial that the court entered a mandatory protection order against Conlon in March or April of 2019. The prosecutor showed the victim a protection order and asked her whether it appeared to be a "true and correct copy" of the protection order the court entered at that time. The victim responded yes. The exhibit was a protection order entered on November 10, 2020.

¶ 99 The victim testified to her understanding that the 2019 protection order provided that Conlon could only communicate with her electronically. She explained that the tone of his electronic communications to her changed after the court entered the order. She said that, following the entry of the order, Conlon's communications to her became "much nicer," more "pleasant," and less threatening.

¶ 100 The prosecution also admitted into evidence 156 pages of text messages and 44 pages of Facebook messages between Conlon and the victim between September 2018 and August 2019. On March

27, 2019, Conlon sent the victim a text saying, in relevant part, "I am texting you about kids & finances *on the authority of the court order issued yesterday* and a text confirmation from [an employee of] social services." (Emphasis added.)

¶ 101 On August 19, 2019, and August 24, 2019, respectively, Conlon sent the following Facebook messages to the victim:

- "Please go to division 407, ask the prosecutors to call my case 19CR875 and ask the judge for phone calls and in person contact. We have to communicate for the boys & finances. I want to communicate with you. I want to see you in person. Will you accept a hug from me?"

- "I will be asking the court to allow phone and in person contact at my next hearing. I just want those options available and I wouldn't be initiating those contacts unless approved by you."

¶ 102 In his closing argument, defense counsel argued that, because the only protection order admitted into evidence was the one dated 2020, there was reasonable doubt whether Conlon had violated a protection order entered between March 27, 2019, and August 25, 2019.

46

¶ 103    The jury picked up on this point.  During its deliberations, the jury asked the court two related questions: (1) "Is there a protection order that is missing from the evidence provided to the jury?"; and (2) "If a protection order exists or existed between Mr. and Mrs. Conlon, what dates were covered under that protection order?"  In response, the court provided the jury with the 2020 protection order (which it had inadvertently omitted from the exhibits sent to the jury) and told the jury that it had all the evidence it was to consider. The jury found Conlon guilty of violating a protection order between March 27, 2019, and August 25, 2019.

¶ 104    We note that the appellate record contains "People's Trial Exhibit 8," which is a protection order dated March 26, 2019, as well as "People's Corrected Exhibit 8," which is the 2020 protection order.  According to defense counsel's post-trial motion for judgment of acquittal, the prosecutor added the 2019 protection order to the record after the trial and labeled it "People's Trial Exhibit 8."  That exhibit was not admitted into evidence.

¶ 105    After defense counsel informed the prosecutor of this mistake, the prosecutor filed the 2020 protection order as "People's Corrected

47

Exhibit 8." As far as we can determine from the record, the jury never saw the 2019 protection order.

## B. Applicable Law and Standard of Review

¶ 106 "The Due Process Clauses of the United States and Colorado Constitutions require proof of guilt beyond a reasonable doubt on each of the essential elements of a crime." *People v. Duncan*, 109 P.3d 1044, 1045 (Colo. App. 2004). To decide whether the prosecution presented sufficient evidence, we consider "whether the relevant evidence, both direct and circumstantial, when viewed as a whole and in the light most favorable to the prosecution, is substantial and sufficient to support a conclusion by a reasonable mind that the defendant is guilty of the charge beyond a reasonable doubt." *People v. Donald*, 2020 CO 24, ¶ 18, 461 P.3d 4, 7 (quoting *Clark v. People*, 232 P.3d 1287, 1291 (Colo. 2010)). In applying the substantial evidence test, we must give the prosecution the benefit of every inference reasonably drawn from the evidence. *Gorostieta v. People*, 2022 CO 41, ¶ 17, 516 P.3d 902, 905. It does not matter that, after reviewing the evidence, we may have reached a different conclusion than did the trier of fact. *Id.*

¶ 107    "To convict a criminal defendant, a jury must unanimously agree that the prosecution has proven all elements of the charged offense beyond a reasonable doubt."  *Id.* at ¶ 18, 516 P.3d at 905. "We generally do not assess the credibility of witnesses or resolve inconsistencies or contradictions in testimony."  *People v. Liebler*, 2022 COA 21, ¶ 20, 510 P.3d 548, 553.  Appellate courts may not serve as jurors or invade the province of the jury "to perform its historic fact-finding function."  *People v. Perez*, 2016 CO 12, ¶ 25, 367 P.3d 695, 701 (quoting *People v. Gonzales*, 666 P.2d 123, 128 (Colo. 1983)).

¶ 108    "[S]ufficiency claims may be raised for the first time on appeal and are not subject to plain error review, and therefore, appellate courts should review unpreserved sufficiency claims de novo."  *McCoy v. People*, 2019 CO 44, ¶ 19, 442 P.3d 379, 385.

### C.    The Evidence Was Sufficient to Support Conlon's Conviction for Violation of a Protection Order

¶ 109    The prosecution bore the burden of proving that, in the State of Colorado between March 27, 2019, and August 25, 2019, Conlon (1) was "personally served with a protection order" or had "actual knowledge" of its contents from the court or law enforcement

49

personnel; and (2) knowingly "[c]ontact[ed], harasse[d], injure[d], intimidate[d], molest[ed], threaten[ed], or touche[d] the protected person." § 18-6-803.5(1)(a)(I), C.R.S. 2025; *see People v. Garcia*, 2017 COA 1, ¶ 37, 452 P.3d 55, 61 ("The mental state of knowingly applies to all relevant elements of the offense of violation of a protection order . . . ."), *aff'd*, 2019 CO 64, 445 P.3d 1065.

¶ 110   Conlon contends that the prosecution failed to prove that he violated a protection order between March 27, 2019, and August 25, 2019, because the only protection order admitted into evidence was the one dated November 10, 2020.  The People counter that the evidence at trial and the reasonable inferences drawn from that evidence were sufficient to support the jury's conclusion that Conlon violated a protection order that was in effect between the specified dates.

¶ 111   As an initial matter, we note that, although the appellate record contains a 2019 protection order entered against Conlon, that order plays no role in our analysis because it was not entered into evidence at trial.  The question before us is whether *the evidence presented to the jury* was substantial and sufficient to support a conclusion by a reasonable mind that Conlon is guilty of

violating a protection order in 2019 beyond a reasonable doubt. *See People v. Coahran*, 2019 COA 6, ¶ 41, 436 P.3d 617, 626 (holding that, in conducting a sufficiency of the evidence analysis, we "consider the evidence admitted at trial").

¶ 112 We conclude that the evidence was sufficient to prove that Conlon violated a protection order between the specified dates, and the jury could have reasonably found that the prosecution proved each element of the offense beyond a reasonable doubt, for the following two reasons.

¶ 113 First, the victim testified that Conlon was the subject of a protection order that was in effect in March or April of 2019. She said that the 2020 protection order was a fair and accurate copy of the order the court entered in March 2019. Further, she testified that the tone of Conlon's electronic communications to her changed after the court entered the 2019 order for protection, becoming more pleasant and less threatening. It was the jury's responsibility alone to weigh the victim's credibility. *Liebler*, ¶ 20, 510 P.3d at 553; *see also People v. Poe*, 2012 COA 166, ¶ 14, 316 P.3d 13, 16 ("It is the fact finder's role to weigh the credibility of witnesses, to

determine the weight to give all parts of the evidence, and to resolve conflicts, inconsistencies, and disputes in the evidence.").

¶ 114     Second, the victim's testimony was consistent with Conlon's text messages to the victim that were introduced into evidence at trial. Conlon's electronic communications to the victim reflect a change in tone after, according to the victim, the court entered a protection order against Conlon. Significantly, as noted above, Conlon acknowledged the existence of a court order on March 27, 2019. On that date, he sent the victim a text saying, "I am texting you about kids & finances on the authority of the court order issued yesterday . . . ." This text message alone was sufficient evidence from which the jury could find that a protection order was entered against Conlon in March 2019 and that he had contemporaneous knowledge of it.

¶ 115     The consistency between the dates of these text messages and when, according to the victim, the court entered a protection order further supports the jury's finding that the prosecution proved all the elements of the protection order count. *Cf. Liebler*, ¶ 12, 510 P.3d at 552 ("[B]ecause the only evidence of force . . . was contradicted by the store surveillance video," the division concluded

there was insufficient evidence to establish the force element of the crime.).

¶ 116 Moreover, no evidence contradicted the victim's testimony regarding the existence of a protection order in 2019. And Conlon does not cite, and we are not aware of, any authorities holding that a prosecutor can only prove a violation of a protection order through the protection order itself.

¶ 117 For these reasons, we conclude the prosecution introduced substantial and sufficient evidence to support Conlon's conviction for violating a protection order.

## V.    Disposition

¶ 118 The judgment is affirmed.

JUDGE PAWAR and JUDGE LUM concur.